# JOSEPH STEINBERGER AND OTHERS *vs.* THE INDEPENDENT LOAN AND SAVINGS ASSOCIATION OF EAST BALTIMORE.

*Building and Loan Associations—Proof of Insolvency Requisite for Appointment of Receiver—Free Shareholders—Withdrawal—Insolvency of Corporation.*

A bill was filed by certain free shareholders in a building association, *i. e.*, subscribers to the capital stock, who were not borrowers from the association, alleging that the corporation was insolvent, and praying for the appointment of a receiver, &c. The evidence showed that the only indebtedness of the association was on a note to one of the plaintiffs, which was paid after the filing of the bill, and about $5,000 on bills payable, none of which were held by the plaintiffs ; that none of the plaintiffs had given notice as required by the constitution of the association, of their intention to withdraw their shares; that the association had about $50,000 in assets applicable for the payment of the above mentioned indebtedness, and that the owners of over $74,000 of free shares desired the business to be continued, the holdings of the plaintiffs amounting to only $544. *Held,*

1st. That since the plaintiffs as free shareholders had not given the notice required to terminate their membership, they are not creditors, and the amount of their holding cannot be considered as an indebtedness due by the association.

2nd. That since the association had ample funds with which to pay its existing indebtedness, there was no ground for declaring it to be insolvent and appointing a receiver.

The relation of free shareholders in a building association to the corporation is one of partnership for a definite time ; they are entitled upon its expiration to the profits of their investments with the right to withdraw upon notice, according to the constitution of the body. As shareholders they do not stand upon an equal footing with creditors. Their claim begins only after every creditor has been satisfied.

The Act of 1894, chap. 263, relating to the insolvency of corporations, has not changed the relation of shareholders to the corporation. It is necessary now, as formerly, to prove that the corporation is unable to pay its debts in the ordinary course of business, before there can be a decree adjudging it to be insolvent.

Appeal from a decree of Circuit Court No. 2, of Balti-
more City (HARLAN, C. J.), by which it was adjudged as
follows : " That the plaintiffs are not entitled to the relief
of a writ of injunction restraining and prohibiting the de-
fendant, its officers and agents from further conducting its
affairs and the appointment of a receiver to take charge of
its affairs and a decree dissolving the defendant corporation
as prayed in the bill of complaint.

" It appearing, however, in the proceedings in Article
XII of the by-laws of the defendant body corporate filed
in the cause, that the plaintiffs, as free shareholders of said
body corporate, have the right to withdraw therefrom ; it
is further adjudged, ordered and decreed, that the defend-
ant pay to each of the plaintiffs his or her proportionate
share of the assets of said body corporate, and that this
cause be referred to an auditor of this Court, with direc-
tions to state an account from the pleading and proof now
in the cause, and such other proofs (if any) as the parties
may produce before him, on giving the usual notice, show-
ing the proportionate share of each of the plaintiffs in and
to the assets of the defendant body corporate.

The article of the constitution referred to is as follows :
" Art. XII. Withdrawals.  This association shall at all
times retain $100 within the treasury for cases of with-
drawal.  Any member who wishes to withdraw his share
from the association shall notify the board of directors in
writing, which shall pay back to him the amount as soon
as the same shall be in the treasury.  Should more than
one withdrawal come at a time they shall be paid in rota-
tion.  Every member who at the time of his withdrawal
shall leave a small amount in the treasury, shall have the
right to keep on paying his shares without extra entrance
fee.  No loans, or notes, or mortgages can be made until
all withdrawals shall have been paid."

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Wm. Colton* (with whom was *Thos. R. Clendinen* on the brief), for the appellants.

Appellee, in its original answer, admitted its insolvency; in its second admits a deficiency of assets as to its free shareholders, and that $20,000 was lost by the defaulting secretary, of which $2,582.38 was received, and in its supplemental answer say it is able to pay 70 per cent., deducting 30 per cent. because of the embezzlement of its former secretary, and by its circular a net loss of 30 per cent. to each free shareholder (such as the appellants) is stated. We insist that the insolvency is established by our proof, and is admitted and conceded by appellee, whose position seems to be, however, that it makes no difference—a contention which, if the Act of 1894 means anything, or was intended to give any rights to persons situated as appellants, or afford any remedy to anyone, is entirely untenable.

Although this concern is called " Loan and Savings Association," it was in fact incorporated under the General Laws of the State of Maryland governing building associations, and its constitution indicates the same idea, but the plan and scheme shown by that constitution are not in accordance with the law governing building associations, nor indeed any corporation of such character with which we are acquainted; so we think its entire plan, including the loan of money, is incapable of enforcement, and that this furnishes another reason why its operation should be arrested, and it wound up.

The meaning of the word *solvency* is usually tested by its opposite, *insolvency*. Suppose a man unable to pay all his debts from his own means, or that all his debts cannot be collected out of those means by legal process, is there any doubt that in the general sense of the word he is insolvent? COWEN, J., in *Herrick* v. *Borst*, 4 Hill (N. Y.), 652. Debts are paid with property, and in its primary and ordinary sense " insolvency is the inadequacy of a man's fund to the payment of his debts." 2 *Bell's Com.* 162, quoted in *Herrick* v. *Borst*, 4 Hill (N. Y.), 652.

It is a general rule that insolvency is a sufficient reason for the appointment of a receiver of the property and franchises of a corporation; so also are the abandonment of the franchises, or acts, *ultra vires*, which latter grounds are frequently provided for by statute. *Beach on Receivers*, secs. 404 and 405; *Evans* v. *Coventry*, 5 De Gex. Macnachten & Gordon, 911. The object of such a statute as the Maryland Act of 1894, authorizing appointment of receivers on behalf of creditors and shareholders in case of insolvency, has been to provide adequate protection to those who would otherwise be without remedy in the usual course of proceeding at law. *High on Receivers*, sec. 313.

It is contended by the appellee that it nowhere appears that a notice of withdrawal was given by any of the appellants to the appellee, of any intention to realize on the deposits or free shares held by such appellants. It can be well understood how such a provision might be proper and salutary in a going concern, thereby enabling such concern to have due regard to various claims of those who are its members, and to arrange the time for the payment of such claims in the order of their presentation, out of the funds on hand, and so kept on hand for this very purpose, but plainly such requirement can have no weight when it is conceded by the appellee, that they had no sufficient funds, nor in fact any fund, to gratify such demand upon or without notice; the very most that the appellee could do was to pay its withdrawing member 70 per cent. of his rightful claim, to return him only little over two-thirds of his own money, and that upon part cash and part time. At one time in England withdrawing members were allowed priority over their fellows who had not given notice of withdrawal, but a qualification of this rule introduced by late decisions denies preference to withdrawing members whose notices are given, when the insolvency of a society has become known to exist, or after the winding up has begun. In fact the insolvency of the association put an end to the right of withdrawal. *In re Sunderland, &c., Building Soc.*, 24 Q. B. D. 394.

And in this connection it must be well to keep in mind that if the association professes to provide for withdrawing members it must keep a fund available for such withdrawing members, otherwise it will be a delusion and snare to set up a rule and guide for the conduct of withdrawing members. Now it is apparent from the evidence, in fact conceded in the argument below, that although it was a duty of the association to provide a withdrawal fund, it had not done so, but it claimed that as soon as the necessary funds were in the treasury, under its by-laws, it would pay such withdrawal demands, admitting, however, that there was not only no such fund in hand, but no reasonable prospect that at any time there would be such fund ; that the whole of its funds were invested in the purchase of commercial paper, or rather promissory notes indiscriminately, and in mortgages, and nothing in the shape of money was left available for all of withdrawing members. Lack of funds under such conditions would be no sufficient defence, upon suit brought by a withdrawing member, at law, and it must be apparent that no Court of Equity might reasonably hesitate to grant the relief sought in this case, upon the ground that the appellants had not complied with a by-law in respect to withdrawing members, when the association with a knowledge of such members and all others, had disabled itself from gratifying such demand, had such demand been made. *Nat. Loan and Homestead Asso.* v. *Hubley*, 34 Leg. Int. (Pa.) 6, 24 L. J. 50 ; *Beethoven Bldg. Asso.* v. *Weber*, 3 Cent. Rep. 916.

But it is contended by the appellee that it is not insolvent, although it is only able to pay 70 cents to every depositor or free shareholder that gave it $1.00, such 70 cents to operate as and discharge from such depositor or shareholder for $1.00 ; and that its present condition does not justify and furnish grounds for the appointment of a receiver upon application of a member or shareholder. " It is the inability of the building association not to pay its outside debts, but to satisfy the demands of its own mem-

bers, that has been recognized as an insolvency. The insolvency of such an institution is *sui generis.* There can be strictly speaking, no insolvency, for the only creditors are the stockholders by virtue of their stock. The so-called insolvency is such a condition of the affairs of the association as reduces the available and collectible funds below the level of the amount of stock already paid in. The association is said to be insolvent when it cannot pay back to its stockholders the account of their actual contributions dollar for dollar." *Towle* v. *American Building, Loan and Inv. Soc.,* 61 Fed. Rep. The "liabilities" of a building society under a rule providing for payment of liabilities before division of surplus profits were held to include sums payable to investing members, while "income" was said to be used not in contra-distinction, but as designating whatever comes in from all sources. *In re West Riding of Yorkshire, per Ben. Bldg. Soc.* 43 Ch. D. 407.

The person most properly entitled to ask for a receiver on the ground of insolvency, and whose standing in Court is the firmest, is the claimant in the character and capacity of a stockholder. In *Endlich on Building Asso.,* sec. 522, the author says : "It is manifest that when the affairs of a building association have reached such a state that it is obviously impossible for it to continue its operations with any prospect of achieving the purposes for the accomplishment of which it was incorporated, it should be dissolved." And a Court of Equity upon application of any member, shareholder or stockholder of such association will accord such relief. *Endlich on Bldg, Asso.,* secs. 508 and 509 ; *Frostburg Bldg. Asso.* v. *Stark,* 47 Md. 338.

It is a right belonging to every member of a building association, by virtue of his membership in such association, in a proper case and under proper circumstances, to invoke the jurisdiction in a Court of Equity to wind up the association where the financial condition of the concern precludes the reasonable probability of the further conduct of its affairs, upon the lines originally laid down therefor.

*Tyrell L. & B. Asso.* v. *Haley*, 139 Pa. 476. The directors of such an association are liable to its members for waste or misapplication of funds, or for gross neglect in the management of its affairs, and resort to equity or law against such directors may be had, either by the association or any member thereof. *Citizens' Loan Asso. of Newark* v. *Lyon*, 29 N. J. Eq. 110.

*Louis P. Henninghausen*, for the appellee.

Free shareholders of this building association are not creditors of, or lenders of money to, the association, they may become creditors by giving notice of withdrawal in writing under section 12 of its constitution. The appellants have failed to give such notice. In the case of a petition for the appointment of a receiver by a shareholder, the Court held: " Such petition must not be a mere creditors' petition. It must express that the petitioner is creditor in respect of money advanced by him as a member of the society, *which he has given notice to withdraw.*" *In re Queen's Benefit Building Society*, 4 L. J. Ch. 381 ; 19 W. R. 762. *Endlich on Building Associations*, sec. 512.

Chapter 263, Laws of Md., 1894, relating to insolvent corporations, we submit refers to insolvency in the commercial sense, and should be construed with reference to and in conjunction with, the General Laws of the State defining acts of insolvency, etc., as chapter 263 fails to define what acts or condition shall constitute an insolvent corporation. If it should be held to apply to the inability of building associations at any time to return to all its free shareholders, the money they have paid in, then every building association is during the first year of its existence insolvent, for the expense of charter, salary, rent, books and office furniture to start a building association are necessarily paid out of funds contributed by free shareholders as dues, this, or any trifling loss in the operation of the association, would under the construction of the law contended for by the appellants, place it in the power of the smallest

free shareholder to demand the appointment of a receiver to wind up the affairs of the association. We hold that the only change made by the Act of 1894 is, to extend the jurisdiction of the Court of Equity over mere insolvent corporations, the language is : " *may be adjudged to be dissolved after the hearing, according to the practice of Courts of Equity in this State :*" That thereby an outside creditor of an insolvent corporation has *ex debito justitiæ* the right to demand the appointment of a receiver to wind up its affairs, but that the law is not changed as to members or shareholders, who apply for receivership, etc.

*In Planet Benefit Building and Inv. Society*, L. R. 14, Ch. 441, it was held : A member of a benefit building society who had given notice of withdrawal entitling him to be paid in rotation, *and who had not been paid*, was not entitled, *ex debito justitiæ*, to an order for winding up the society—but different as to a creditor. See *In re Professional Com. & Ind. B. Building Society*, 6 L. R. Chanc., D. 863. *In re Guardian, &c., Bld. Socy.*, 48 L. T. Rep. 145.

All authorities agree that strictly speaking, a building association cannot be insolvent if the only creditors are the stockholders. *Endlich Bldg. Assns.*, secs. 511, 512. *Towle v. American Building, &c., Co.*, 61 Fed. Rep. 447 ; 60 Fed. Rep., 131 ; *Davis v. Gemmell*, 73 Md. 536 ; *Davis v. U. S., &c., Co.*, 77 Md. 35 ; *Frostsburg, &c., Assn. v. Stark*, 47 Md. 345.

RUSSUM, J., delivered the opinion of the Court.

Frederick Keller filed his bill in the Circuit Court No. 2, of Baltimore City, against the appellee, alleging that it had issued notes, under its corporate powers, for the purpose of borrowing money to carry on its business of lending money to its members ; that some of said notes were overdue and unpaid ; that the said corporation had become greatly embarrassed, and was without means to meet them ; that it was indebted to the complainant in the sum of $1,800.00, on its promissory note, which was past due and unpaid ;

that the said corporation was embarrassed at the time of the loan by him, and afterwards became still further embarrassed; that the said corporation was insolvent; that the secretary had defaulted to a large amount, and that unless its affairs were taken out of the hands of its officers by the Court, the available assets would be wasted and dissipated. The prayer of the bill was for an injunction, and a receiver and for general relief. Afterwards, Joseph Steinberger, John Krepp, Joseph Bitzelberger, Mary Krepp and Jesse Marsden, the appellants, were made parties complainant. The answer avers that Frederick Keller had, by an order filed in the cause, dismissed the bill; denies the insolvency of the corporation; denies that the then complainants were *creditors;* and avers that they are *free shareholders,* who had failed to give notice in writing of their withdrawal, as required by Article 12 of the constitution of the association. A number of witnesses were examined, and the facts proven by the testimony are (1) that the claim of Frederick Keller had been settled and that he had dismissed the bill, as to him; (2) that the alleged indebtedness consisted in the subscriptions of the " free shareholders," and five thousand dollars owing to " bills payable," none of which were held by the complainants; and (3) that an overwhelming majority in number and in value of the free shareholders desired that the business of the association should be continued. At the hearing of the cause below the complainants prayed leave to amend the prayer of the bill, so that, in addition to the relief prayed for therein, they should have the benefit of the prayer " that the said corporation shall be adjudged to be insolvent, and to have surrendered its corporate rights, privileges and franchises and may be adjudged to be dissolved," which was granted, and the amendment ordered to be " treated as made, in the form and words set forth" in the petition.

The contention of the appellants is that they have proven all that is necessary to absolutely entitle them to a decree determining that the corporate rights, privileges and fran-

chises of the appellee have been forfeited; to have it adjudged to be insolvent and dissolved; to have an injunction restraining its officers and agents from further conducting its business, and to have a receiver appointed to take charge of its affairs—and this, too, without regard to the consequences. With this contention we cannot agree. In our opinion the proof is legally insufficient to establish, the insolvency of the appellee, in the absence of which such action by a Court of Equity would be unwarranted by reason or authority.

It is conceded that the appellee is incorporated under the laws of this State governing building associations, and the proof is that the relations of the appellants were those of "free" shareholders—that is to say, subscribers to its capital stock, who were not borrowers from the association— and that they had not given notice of their withdrawal, as required by Article 12 of its Constitution. Their relations to the association were essentially one of partnership for a definite time, entitled upon its expiration to the profits of their investments, and with the right to withdraw upon notice in writing to the directors as required by Art. 12 of its Constitution. Their membership does not terminate until the notice has been given and accepted, and, *until then*, they could not assume the position of *creditors*. As shareholders they do not stand on an equal footing with creditors. Their claim begins only after every *creditor* has been satisfied. *Endlich on Building Assoc.*, secs. 127, 511, 512; *Towle* v. *Am. Build. Loan.*, *&c.*, *Co.*, 61 Fed. Rep. 447; *Ibid*, 60 Fed. Rep. 131; *Davis et al.* v. *Gemmell*, 73 Md. 537.

The free shareholders who have not given the required notice not being *creditors*, and there being no proof that any of them had done so, it follows that the sum of sixty thousand dollars, the amount of their holdings, as stated in the argument of appellants' counsel, cannot be considered an *indebtedness* due by the association; and that, instead of a deficit in the assets, there remains the sum of fifty

thousand nine hundred and fifty dollars available for the
payment of " about " five thousand five hundred dollars
owing on "bills payable "—which is the only *indebtedness*
proven in the testimony, or claimed to exist, in the argu-
ment of the cause.

The Act of 1894, ch. 263, has not changed the relations
of shareholders to the corporation of which they are mem-
bers ; nor has it established any new rule relative to the
character of the proof necessary to prove the insolvency of
a corporation.   It is just as necessary now as before that
Act to prove that a corporation is unable to pay its debts
in the ordinary course of business, as persons in trade usu-
ally do, before there can be a decree adjudging it to be in-
solvent.

This requirement has not been met in this case, because
the appellants, and all others in like relations to the appel-
lee, are not creditors.   By their own showing, the actual
debt owing by the appellee does not exceed five thousand
five hundred dollars, " in bills payable," to meet which
there are nearly fifty-one thousand dollars of assets.   The
holders of these " bills payable " do not appear to be want-
ing in confidence in the safety of their debts, and about *five
hundred* of the shareholders, who own over *seventy-four
thousand dollars* in " free " shares, and who are exactly in
the same position with the appellants (whose holdings
amount only to $544.42) desire to continue the association,
believing that it will, thereby, be more likely to get rid of
its difficulties, and the shareholders be more likely to re-
ceive their proper proportion of its assets.   Moreover, the
proof shows that, before the depositions were taken, the
affairs of the appellee had been placed under the manage-
ment of new officers, who are both honest and capable ;
and that, instead of being guilty of waste, fraud or negli-
gence, they are making active and earnest efforts, and had
been partially successful in recovering the loss incurred,
partly through an incompetent and unfaithful officer ; and
partly by the payment of dividends largely in excess of the

earnings; and a part of which went into the pockets of the appellants. It has been definitely settled in this State that the power to appoint receivers is a discretionary one, to be exercised with great circumspection, and only in cases where there is fraud, spoliation or imminent danger of the loss of the property, if the immediate possession should not be taken by the Court, and these facts clearly appear. *Davis et al.* v. *Elect. Power, &c., Co.,* 77 Md. 40.

To declare the appellee to have forfeited its rights, privileges and franchises, to be insolvent and to be dissolved, and to place its affairs in the hands of a receiver, in the absence of some controlling rule of law imperatively demanding it, and which does not here exist, would be lending the aid of a Court of Equity to the wrecking of a corporation, entailing great and useless loss and injury to its shareholders. And, this, too, where it is conclusively proven that a course so destructive of the interests of the many is not necessary to protect the interests of the few. *In re Prof. & Com., &c., Building Soc.,* L. R. 6, Ch. App. 863 ; *B. & O. R. R. Co.* v. *Cannon,* 72 Md. 498.

Fully concurring with the learned Judge below, that the appellants are not entitled to the relief prayed for, the decree appealed from will be affirmed with costs.

(Decided January 6th, 1897.)