## FRANK H. CALLAWAY et al., *vs.* THE POWHATAN IMPROVEMENT CO. OF BALTIMORE CITY.

*Bill by Minority Stockholders Asking for the Appointment of a Receiver for a Corporation Alleged to Have Been Mismanaged.*

A bill filed by a small minority of the stockholders of a corporation alleged that the directors had mismanaged its affairs and been guilty of various acts of negligence ; that the property of the corporation was depreciating in value and that it was in danger of becoming insolvent. The prayer of the bill was for the appointment of a receiver, the dissolution of the corporation and the sale and distribution of its assets. There was no fraud or illegality charged against the directors and the testimony showed that the corporation was fully solvent although its management had not been as successful as in previous years. *Held*, that the bill should be dismissed since the right of the majority of the stockholders to control the business and policy of the corporation will not be interfered with by the Court at the instance of minority stockholders unless the officers do some act that is fraudulent, illegal or *ultra vires*.

Appeal from a decree of the Circuit Court of Baltimore City (RITCHIE J).

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Fielder C. Slingluff* with whom were *R. L.* and *T. Rowland Slingluff* on the brief), for the appellants.

The case as presented by the testimony is one of abandonment on the part of those having charge of the property so far as the objects and purposes for which it was incorporated and formed, and finally the testimony shows that pending the determination of this case, the corporation sold the mill sites and also "all and the exclusive water power of Gwynn Falls, for the whole extent of the property now owned by the Powhatan Improvement Company from the Liberty turnpike south to the dam heretofore mentioned," which included practically the entire water right of the property, and then entered into a further covenant in said agreement to sell

that "the vendor further warrants and agrees and shall cove-
nant for itself, its successors and assigns, in the deed to -- ex-
ecuted, that no building for mills, factories or any other man-
ufacturing establishment of any kind have hereunto been or in
any time hereafter be built on any portion of the remaining
portion of the land now owned by the Powhatan Company,
which shall drain in the said falls except pure hot and cold
water drainage into said falls is now or any time be permitted
upon any portion of said land now owned by said Powhatan
Improvement Company." The result of this sale and agree-
ment is practically to prevent the corporation from carrying
out one of the objects and purposes of the corporation namely
that of manufacturing. This agreement of sale has been con-
summated and the deed passed containing these covenants.

Is this a case where the Court will interfere at the suit of
stockholders? Each case must stand on its merits. If the
corporation has been guilty of a breach of trust, the Court will
interfere at the suit of the stockholders.

The following decisions warrant the appointment of a re-
ceiver upon the facts alleged and proven in this case. *Miner*
v. *Belle Isle Ice Co.*, 93 Mich. 97; *Stephens* v. *Am. F. I. Co.*,
48 Pac. R. 83; *Houston Cemetery Co.* v. *Drew*, 36 S. W. R.
802; *Stevens* v. *Davison*, 18 Grattan, 828; *Cunliffe* v. *Canal
Co.*, 2 Russell & Mylne, 480; *Coleman* v. *Eastern Counties Ry.
Co.*, 10 Beav. 1; *March* v. *Ry. Co.*, 40 N. H. 548; *Matthews*
v. *Bank of Allendale*, 14 Am. & E. Corporation cases, N. S.
306; *Stahn* v. *Catawba Mills*, 53 S. C. 529; *O'Cannon* v.
*Knoxville Hotel Co.*, 93 Tenn. 708; *Coal Co.* v. *Edwards*, 103
Ill. 474; *Hawes* v. *Water Co.*, 104 U. S. 450; *Davis* v. *U. S.
Electric Co.*, 77 Md. 35.

*Clarendon I. T. Gould* and *Albert S. J. Owens*, for the ap-
pellee.

The bill of complaint herein does not charge *fraud, illegality
or ultra vires* acts, nor is there the slighest evidence of the
existence of any such grounds for *the interference* of a Court
of equity. *Fraud* or *imminent danger* must not only be al-

leged, but must be clearly proven in order to secure the appointment of a receiver. *Blondheim* v. *Moore*, 11 Md. 365; *Davis* v. *The U. E. Light & Power Co.*, 77 Md. 35; *Du Puy* v. *Terminal Co.*, 82 Md. 426.

Have the plaintiffs endeavored to bring this case within sec. 264 of Art. 23 of the Public General Laws of Maryland? If so, the allegations of the bill are insufficient to give a Court of equity jurisdiction. For in sec. 12, the bill alleges that the continuation of the present policy will be to make the corporation insolvent; and in sec. 15, and the plaintiffs charge that so far as they, as stockholders, are concerned, the corporation is insolvent, and has not assets sufficient to pay back to them the money paid by them for the stock.

As to this, this Court has decided that a Court of equity is without jurisdiction, unless the bill alleges insolvency, and the proof sustains the allegations. *Mason* v. *Equitable League*, 77 Md. 483. While the evidence produced by the appellant shows that at the time of the filing of the bill in this case, the appellee had assets exceeding its liabilities of more than $93,000. In *Sternberger* v. *Savings Association*, 84 Md. 625, this Court refused to appoint a receiver for a corporation upon the application of a very small minority of the shareholders, under circumstances similar to this case.

The appellee in this case is not in "difficulties." The appellants own, *but three thousand dollars worth of the capital stock*, while there are outstanding stockholders owning *eighty-nine thousand, nine hundred dollars worth of its capital stock*, who are in favor of the continuance of the present conditions—no creditors are asking payment of their debts; if so, they could get every dollar on demand—and the entire indebtedness at the time of the filing of the bill of complaint herein was $5,583.33, as against assets of $98,880.19, showing excess of assets over liabilities of $93,286.86. Since the filing of this bill 42 acres of the property have been sold for $25,000, so that now the real condition of affairs is as follows:

356 acres of ground at $250 an acre.........  $ 89,000 00
Amount of sales of 42 acres................     25,000 00

Other assets, November 30th, 1900 . . . . . . . . . .          380  19

                                                        $114,380  19
Debt. . . . . . . . .  . . . . . . . . . . . . . . . . . . .  . . . . .    5,583  33

Net assets over liabilities. . . . . . . . . . . . . . . . .   $108,416  67
Amount of outstanding stock.  . . . . . . . . . . . .    92,900  00

Excess of holdings over debts and stock . . . . . .   $  15,516  67

BOYD, J., delivered the opinion of the Court.

The bill in this case was filed by Frank H. Callaway and William J. Sneeringer in their own behalf as stockholders of the Powhatan Improvement Company of Baltimore City, and on behalf of other stockholders of said company who would become parties to the bill. Mr. Callaway was the owner of twenty and Mr. Sneeringer of forty shares of the capital stock of the company, of the par value of fifty dollars per share. The company was organized in 1891 with an authorized capital of one hundred thousand dollars, " for the purpose of buying, selling, mortgaging, leasing, improving, disposing of or otherwise dealing in lands in this State," and in 1894 the charter was amended so as to include the " further purpose of manufacturing woolen and cotton goods and yarns and such other manufacturing enterprises as the said corporation may determine to engage in, and to conduct a general merchandise store in connection therewith." The bill alleges that the company purchased a tract of land in Baltimore County, containing about 397 acres, upon which there were two mills, one of which was equipped as a woolen or a cotton mill and the other not equipped, also a store house and about sixty dwelling houses for the employees of said mills ; that the company for a short time engaged in the manufacture of yarns and stockings, but gave up the manufacturing business and rented one of the mills which was destroyed by fire on December 2, 1895 ; that thirty-six thousand dollars of insurance money was received by the company, but no effort was made to rebuild the

mill and the manufacturing and general merchandise business have been abandoned. It also alleges that the company had done nothing for the past four years towards carrying out the purposes of its original charter and that the directors had practically abandoned the objects and purposes of the incorporation. It charges that the property is rapidly depreciating in value, the houses are mostly unfit for habitation, the dam which furnished the water power for the mills has been washed away, the mill race practically destroyed and "that the continuation of the present policy of the board of directors, elected by a majority of the stockholders who have control of the corporation, will be to make the corporation insolvent and to cause loss of the entire capital stock of the plaintiffs." It is also alleged that there is a mortgage on the property concerning which there is litigation pending, but there is a considerable amount due on it and the company has no assets with which to pay the same when ascertained, unless it again borrows money to repay that borrowed on the mortgage, and "that so far as they, as stockholders, are concerned, the corporation is insolvent and has not assets sufficient to pay back to them the money paid by them for the stock, and the condition of the corporation is daily growing worse." After further alleging that the inactivity and negligence on the part of the officers and directors of the company have been so disastrous that its business can no longer be carried on with profit or advantage, and that the interests of the stockholders and creditors require that the business be wound up and the assets sold and disposed of, the bill prays for the appointment of a receiver and that the corporation be declared to be dissolved, its effects applied to the payment of its debts and liabilities and the residue distributed among the stockholders. Mr. Sneeringer subsequently withdrew as plaintiff and Messrs. F. C. and Frank Slingluff, trustees, who hold forty shares of stock, were substituted in his place.

The company by its answer denied most of the important allegations of the bill and alleged that it did not continue in the manufacturing or mercantile business after the destruction

of its mill because the stockholders decided that the money received from the insurance could be more advantageously used in developing the property according to the original plan of the company. It states that the mortgage is only on thirty-five acres of the property and that there is only $3,733.33 due on it, which it had tendered to the mortgagee and that it only owed in addition to that a note for $600 which had not matured, that its assets consist of 365 acres of land appraised at $250.00 per acre, besides the equity of redemption in the thirty-five acres, furniture, farm implements, rent accounts and a small cash balance in bank. It denies that the board of directors had abandoned the management of the company's affairs, although it is admitted that they did not meet regularly, as the executive committee had active charge of the company.

The testimony shows that many of the houses owned by the company were vacant and very few of them are kept in good condition but that was to a great extent the case when the property was purchased. The fact that many of the dwellings had been unoccupied for some years has undoubtedly made their condition worse, but the evidence shows very clearly that it has not been possible to keep them occupied since the destruction of the mill, as tenants cannot be obtained for them unless there is work in the neighborhood. It is said by the appellants that that is the result of the failure of the officers and directors to rebuild the mill, but it is impossible to say that it would have been advantageous to the company to have done so. It would probably have involved the company in debt and the mill might not have been successful if it had been rebuilt, as it was not when the company did run it. The officers were endeavoring to develop the property in accordance with the original plans, but even if it be conceded that it was a mistake not to rebuild the mill, that would not justify the Court in taking possession of the property. There is nothing to show any misconduct on the part of the officers and directors, and if the company is to be put in the hands of a receiver because they made a mistake (if that be conceded) of that kind, it would establish a most dangerous precedent.

The dam was not kept in repair because it was no longer of use after the mill was destroyed.   The testimony on the part of the appellants does show that the improvements on the property have not been kept in very good condition and it is doubtless true that when a building of that kind which furnishes employment to the occupants of dwelling houses is destroyed, the dwellings will soon become more or less dilapidated, but it is not always easy for the owner to determine whether it is best to rebuild a factory or mill in order to keep other property occupied, or take the risk of permitting the lattter to fall into decay for want of tenants.   The explanation of the president and others connected with the management is certainly not altogether unreasonable and there is testimony tending to show that Mr. Callaway, one of the plaintiffs, is at least in part responsible for some of the expenditures that are now complained of, and he sent proxies to the president of the company to vote at several of the annual meetings.   The capital stock of the company has been issued to the amount of $92,900, and the stockholders that now seek to have a receiver appointed only represent three thousand dollars of it. After this bill was filed a meeting of the stockholders was called to take action on it and out of 1178 shares represented at the meeting, 1056 were voted to resist the appointment of receivers.   Since the bill was filed a sale of forty-two acres has been made for $25,000, and there is evidence to the effect that the remainder is worth $250.00 per acre, although that may be more than will be realized from it.

Without stating the evidence more in detail than we have, it seems clear to us that the Court below was right in refusing to appoint a receiver and dismissing the bill.   There is no fraud charged against the officers of the company and they have not attempted to make any fraudulent disposition of the corporate property.   The most that can be said against them is that they have not succeeded in making an advantageous sale of the property, and under their management the houses and other improvements have been permitted to get out of repair.   But the evidence abundantly shows that numerous efforts have

been made to sell the property and there is every reason to believe that more can be realized out of it through the officers of the company, than by means of a receiver's sale. There are no debts which cannot be met by the company, and the other stockholders, representing ninety thousand dollars of stock, are certainly as much interested in the success of the company as are these complainants who represent one-thirtieth of that amount. The annual elections of directors have been regularly held and the complainants have apparently not made much effort to correct the conditions complained of, at those meetings. It may be that with such small holdings of stock they could have accomplished but little, but they ought at least to make reasonable effort to do so, before calling upon the Court to adopt their views as to the proper way to conduct the business. Under such conditions as those complained of in this case, where only bad management and not fraud is charged, the minority stockholders may be of great service at the meetings, yet the evidence shows that Mr. Callaway not only did not attend the meetings regularly, but at times sent his proxies to the president, of whom he now complains. He criticised in his testimony the plan adopted for improving the property, although the evidence shows that the plan was not only approved of at a meeting of the stockholders, but Mr. Callaway himself made the motion, which was adopted. He occupies a very inconsistent position to thus take part in the formation of plans to be adopted for the improvement of the property and allow the president to vote his stock, and then base his application for the appointment of a receiver on the mismanagement of those he had helped to keep in office and that too when part of what he calls mismanagement was the doing of what he had himself put in motion.

There is nothing in the testimony to justify the charge in the bill that the directors had abandoned their duties, unless it be the mere fact that they did not hold monthly meetings, as contemplated by the by-laws. But there is nothing in the record to show that the company has sustained any loss by reason of the fact that the monthly meetings were not held,

and, so far as shown, the directors were ready to, and did meet, when anything was to be done.   The president and some of the directors were endeavoring to effect a sale of the property, and real estate agents had been interested in an effort to accomplish that.   As was said in *Du Puy* v. *Terminal Company*, 82 Md. 426, " Mere internal dissensions among stockholders, or mere differences or disputes as to corporate management, so long as the officers or stockholders do no act that is fraudulent, illegal or *ultra vires*, will not warrant the intervention of a Court of Chancery ; because in the absence of fraud, illegality or conduct that is *ultra vires*, the will of the majority is entitled to control the policy and the business of the body corporate."   Fraud is not even alleged in this bill and there is no such illegality or *ultra vires* conduct shown as entitle the plaintiffs to relief.   If the allegation in the bill be conceded to be sufficient to charge insolvency, the proof is not of such a satisfactory and conclusive character as would justify the Court in dissolving the corporation—on the contrary the evidence is to the effect that it is solvent.   " It has been definitely settled in this State that the power to appoint receivers is a discretionary one, to be exercised with great circumspection, and only in cases where there is fraud, spoliation or imminent danger of the loss of the property, if the immediate possession should not be taken by the Court, and these facts clearly appear."   *Steinberger* v. *Savings Association*, 84 Md. 636.   We cannot more appropriately conclude this opinion than by quoting from the one last cited, where it is said : " To declare the appellee to have forfeited its rights, privileges and its franchises, to be insolvent and to be dissolved, and to place affairs in the hands of a receiver, in the absence of some controlling rule of law imperatively demanding it, and which does not here exist, would be lending the aid of a Court of equity to the wrecking of a corporation, entailing great and useless loss and injury to its shareholders.   And this too, where it is conclusively proven that a course so destructive of the interests of the many is not necessary to protect the interests of the few."

*Decree affirmed, appellants to pay the costs.*

(Decided June 17th, 1902.)