JOHN D. HOSPELHORN, RECEIVER *v.* GENERAL
MOTORS CORPORATION
GENERAL MOTORS CORPORATION *v.* JOHN D.
HOSPELHORN, RECEIVER.
[Nos. 75, 76, October Term, 1935.]

*Decided January 16th, 1936.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Alexander Armstrong,* with whom were *Joseph C. France* and *J. Purdon Wright* on the brief, for John D. Hospelhorn, receiver.

*William H. Hudgins,* for the General Motors Corporation.

URNER, J., delivered the opinion of the Court.

The questions presented by the cross-appeals in this case are to be determined upon the basis of the following stipulated facts:

General Motors Corporation had a deposit account with the Baltimore Trust Company, under an agreement that, when the account exceeded such figure as the depositor should designate from time to time, the trust company would, without further instructions, telegraph the excess amount to the Guaranty Trust Company of New York for the account of General Motors Corporation with that institution. On February 17th, 1933, a letter was mailed by General Motors Corporation to the Baltimore Trust Company reducing the limits previously specified for its account and thus imposing upon the trust company the duty to telegraph the excess over $90,000, in accordance with its agreement, to the Guaranty Trust Company of New York. That notice was received by the trust company on February 20th, 1933. The balance to the credit of General Motors Corporation's account was then $217,550.33, and therefore the sum which should have been telegraphed to New York was $127,550.33. But, as stated in the stipulation, the letter which required such a remittance "received no attention from the officers or employees of the Baltimore Trust Company prior to the closing thereof on February 25, 1933."

Beginning with that date, the Governor of Maryland by various proclamations made a legal holiday of every week day until and including March 4th, 1933, when the Legislature of Maryland passed the Emergency Banking Act (Acts 1933, ch. 46, Code, art. 11, secs. 71A to 71Q), whereby all banks incorporated under the laws of Maryland were placed in the custody of the bank commissioner, who thereupon assumed custody of the Baltimore Trust Company, and refused to permit it to open for business upon a normal basis, or to permit the unrestricted withdrawal of deposits. The custody of the bank commissioner continued until January 5th, 1935, when it was terminated by his appointment as receiver in this proceeding.

The balances in the account of General Motors Corporation with the Baltimore Trust Company on and subsequent to February 20th, 1933, were as follows: February 20th, 1933, as already noted, $217,550.33; February 21st, $237,483.75; February 23rd, $299,783.74; February 24th, $230,958.69. As adjusted by subsequent minor debits and credits, the final deposit balance in the account became $230,761.73 as of March 4th, 1933, when the Baltimore Trust Company passed into the custody of the bank commissioner.

Upon the ground of an alleged breach of contract of the Baltimore Trust Company in failing to transfer by telegraph to the Guaranty Trust Company in New York for account of General Motors Corporation, prior to the closing of the Baltimore Trust Company on February 25th, 1933, the excess above $90,000 of the final deposit balance of $230,761.73, a certain Willard Doty, assignee of General Motors Corporation as to such excess, but not an assignee for value, obtained from the Supreme Court of New York County, New York, on March 3rd, 1933, a warrant of attachment against certain funds of the Baltimore Trust Company then on deposit with the Guaranty Trust Company, which attachment was actually laid in the hands of that company on March 8th. The sheriff had attempted to lay the attachment on the morning of

March 4th, but was not then permitted to enter the banking rooms of the Guaranty Trust Company, as that day had been declared a legal holiday by the Governor of New York. The Maryland Emergency Banking Law was signed and became effective at 9:55 a. m. on March 4th, 1933. The bank commissioner of Maryland and the Baltimore Trust Company appeared specially by counsel, and filed a motion to vacate the attachment. That motion having been overruled, the Baltimore Trust Company appeared generally and filed an answer in the suit. On November 16th, 1933, Willard Doty, as assignee of General Motors Corporation, recovered a judgment therein against the Baltimore Trust Company in the amount of $134,970.18, upon which judgment he collected on that day the sum of $74,387.30 from the funds of the Baltimore Trust Company attached in the hands of the Guaranty Trust Company. In that proceeding Willard Doty acted as plaintiff merely for the convenience of General Motors Corporation, and the recovery by him constituted a payment to be credited on the judgment which he obtained for its use and which he later assigned to it, the uncollected portion thereof being approximately $60,-582.88, with interest from November 16th, 1933, at six per cent.

The stipulation continues as follows:

"On March 20th, 1933, subsequent to the levy in said attachment proceeding, the bank commissioner permitted General Motors Corporation to withdraw five per cent. of its aforesaid deposit, namely, the sum of $11,538.-09, leaving a restricted deposit of $219,223.64. At the same time the bank commissioner permitted all other depositors of the Baltimore Trust Company to withdraw 5 per cent. of their respective deposits. Subsequently thereto, a plan of reorganization in accordance with the provisions of the Emergency Bank Act was submitted to the said bank commissioner by the Baltimore Trust Company, and was approved by him. Among other things this plan provided for the formation of the Baltimore National Bank as the successor, in part, of the Baltimore

Trust Company, and that ten per cent. of all restricted deposits in excess of $10.00 as of the date of the consummation of the plan would be made available to those becoming parties to the plan, either by unrestricted deposits in the new bank or by direct payment by the old bank. Said plan further provided for the issuance of certificates of indebtedness for the balance of such restricted deposits, payable on July 1, 1938, and bearing interest at the rate of two per cent. per annum, and likewise provided that all depositors who did not express their dissent in the manner specified in section 711 of the Emergency Banking Act (Acts 1933, ch. 46) should be and become parties to the plan. General Motors Corporation took no steps to dissent in the manner specified in said plan or by section 711 of the Emergency Banking Act, and, accordingly, became a party to said plan. After the consummation of said plan, to wit, on August 4th, 1933, the said ten per cent. dividend on the restricted deposit of General Motors Corporation was entered to its credit upon the books of the Baltimore National Bank by order of the bank commissioner. This restricted deposit had become $219,599.81, made up of the original claim of $230,761.73, less the five per cent. payment of $11,538.09, or $219,223.64, plus interest of $376.17, so that the amount of said ten per cent. dividend was $21,959.98. On the same date a certificate of indebtedness was issued to General Motors Corporation for the balance of said deposit, namely, $197,639.83. Said ten per cent. dividend of $21,959.98 has not been withdrawn from the Baltimore National Bank by General Motors Corporation, and remains intact exactly as placed on deposit there by the bank commissioner. The aforementioned certificate of indebtedness was received by General Motors Corporation, has never been returned by it, and is still in its possession.

"In February, 1934, when the bank commissioner authorized the payment of a dividend of 20 per cent. on the balances then remaining due on the outstanding certificates of indebtedness of the Baltimore Trust Com-

pany to the holders thereof, he directed said trust company to withhold said dividend from General Motors Corporation until such time as that dividend, amounting to $39,527.97, and subsequent dividends on its certificate of indebtedness, should equal the amount of money recovered by General Motors Corporation in the attachment proceeding in New York, to wit, the sum of $74,-387.30, as hereinbefore mentioned. General Motors Corporation thereupon made demand upon said Baltimore Trust Company and upon the said bank commissioner for the payment of the said dividend, with proper adjustments because of the money recovered in New York, but up to the time of the appointment of the receiver herein, the said bank commissioner steadily refused to permit the Baltimore Trust Company to make such payment. Upon the appointment of the receiver herein, General Motors Corporation made demand upon him for the payment of the said dividend, with adjustments as aforesaid, but has been informed by said receiver that he is unable to make such payment without General Motors Corporation having first obtained from this court an order authorizing and directing him to do so. Whereupon the present petition was filed on March 22, 1935."

Upon allegations of fact similar to the recitals in the quoted stipulation, the petition of the General Motors Corporation in this case asserts that the action of the bank commissioner in ordering the dividend of $39,527.-97 to be withheld from the petitioner was in violation of its legal right as the holder of a certificate of indebtedness of the Baltimore Trust Company, and as a party to its reorganization plan, and was in excess of any power conferred upon him by the Emergency Banking Act or by any other statute of the State of Maryland, and that in the receivership proceedings now pending the petitioner, as the holder of the certificate of indebtedness referred to, is not barred from receiving the regular twenty per cent. dividend thereon by reason of the fact that, by the attachment levied twenty-two months before the institution of the receivership proceedings,

it had, fourteen months prior thereto, recovered a portion of the claim now evidenced by the certificate. The petition therefore prayed for an order authorizing and directing the receiver, upon the surrender of the certificate of indebtedness, in the amount of $197,639.83, to pay to the petitioner such sum of money as represents the dividend of twenty per cent. declared on August 4th, 1933, with proper additions for interest from that date, but taking into account the receipt of $74,387.30 by the petitioner on November 16th, 1933. The answer of the receiver admitted the material facts alleged in the petition, but denied that the action of the bank commissioner in regard to the twenty per cent. dividend on the certificate of indebtedness held by the petitioner was in violation of its legal rights, or was in excess of the commissioner's statutory powers, and averred that by the petitioner's acceptance of the preceding five per cent. and ten per cent. distributions on its claim, and by its acquiescence in the plan of reorganization, it restricted itself to the receipt of only such sums as might be paid in accordance with the provisions of the plan, and that if the prayer of the petition should be granted, it would result in the petitioner, although a party to the plan, "becoming a preferred creditor of the Baltimore Trust Company and receiving on account of its deposit claim an amount greatly in excess, proportionately, of the amounts paid to all other depositors in said institution at the time it was taken over by the bank commissioner and to all other depositors who became parties to the plan of reorganization."

The court below decreed that the receiver "pay, or cause the Baltimore Trust Company to pay, to General Motors Corporation the sum of $15,916.25, with interest at six per cent. from February 18, 1934, in full settlement for the twenty per cent. dividend in the amount of $39,527.97, declared on February 18th, 1934, upon the certificate of indebtedness of the Baltimore Trust Company in the amount of $197,639.83 theretofore issued to General Motors Corporation," but that it

"shall not be entitled to receive the payment of $15,916.25, and interest * * * until it shall first have entered upon the certificate of indebtedness aforesaid a credit of $74,-387.30, as of November 16, 1933, representing the amount of money recovered by General Motors Corporation on that date in the City of New York. * * * "

The receiver appealed from the decree because it rejected his theory as to the equalization of General Motors Corporation with other creditors in the distribution of the funds available for their claims, and the corporation appealed because the amount awarded to it by the decree was less than the sum it believes to be allowed if correctly calculated. It was agreed in the argument that the decree adopted the following method of ascertaining the amount to which the petitioner was held to be entitled: The sum recovered in New York ($74,387.30) was deducted from the amount ($230,761.-73) to the credit of the petitioner in the Baltimore Trust Company, leaving a balance of $156,374.30. The three dividends of five, ten and twenty per cent. on the claims of depositors, successively reduced by those distributions, were in the aggregate equivalent to 31.6 per cent. of the original amounts of the claims. By the application of that percentage to the petitioner's ascertained balance of $156,374.30, the total of the dividends found payable to it was calculated to be $49,414.32. From that amount was deducted $33,498.07 as the sum of the five per cent. allotment ($11,538.09) on the original balance of $230,-761.73, and the ten per cent. dividend ($21,959.98) on that balance as reduced by the preceding payment. The result was the award of $15,916.25 specified in the decree. It is claimed for the petitioner that the amount of its recovery ($74,387.30), in its attachment proceeding in New York, which was collected subsequently to both the five and ten per cent. dividends, should not have been deducted from its deposit balance for the purposes of the chancellor's calculation, but should have been credited on the claim only as of the day of its actual receipt, and as affecting the basis of the twenty per

cent. dividend later provided. Upon that theory the petitioner would be entitled to $24,650.51, for present payment or for an equalization credit, as determined by our adjudication of the main question to which we have referred.

An affirmance of the decree in this case would, in practical effect, assure to General Motors Corporation, as a depositor of the Baltimore Trust Company, a permanent preference in the distribution of its assets among its creditors. The money procured by the New York attachment would normally have been distributable to all of the creditors ratably in the course of the trust company's liquidation. While there is no question as to the propriety of the attachment suit, nor as to the validity and effectiveness of the resulting judgment, the important fact is that one of the trust company's creditors thereby secured the exclusive benefit of funds in which its other creditors would ordinarily have had an equal interest, and the question is whether such an appropriation should be disregarded when the creditor obtaining it proposes to participate equally with other depositors in the distribution of the funds in this state realized from the insolvent bank's remaining assets.

It was not until a levy was made on March 8th, 1933, under the writ of attachment issued at the suit of General Motors Corporation, that it acquired an inchoate lien on the Baltimore Trust Company's New York bank deposit. 6 *C.J.* 213; 2 *R.C.L.* 856; *Deibert v. State,* 150 Md. 687, 133 A. 847. The trust company had then been in the custody of the bank commissioner of Maryland since March 4th, under the Emergency Banking Law, which included a provision that during the period of such custody "the assets and business of the institution shall be deemed to be in the possession of the said Bank Commissioner *in custodia legis,* and the property of said institution shall not be subject to attachment, execution, distraint or seizure under judicial process of any kind." Acts 1933, ch. 46, Code, art. 11, sec. 71B. That and other provisions of the Emergency Banking Law were said

in *Ghingher v. Pearson,* 165 Md. 273, 296, 168 A. 105, 114, in the opinion of the court as delivered by Judge Parke, to have a "close analogy with those sections of article 11 of the Code that relate to the possession of the bank commissioner as a receiver under section 9 of article 11. In fact during their period of operation, the terms of the additional sections enacted by the act of 1933 are, with respect to the possession, custody, and control of the commissioner, more comprehensive, absolute, and exclusive." One of the evident objects of those provisions was to deny equally to all creditors the right to acquire any individual advantage pending the solution of the problem as to the bank's ability to resume normal operations or as to the necessity for its liquidation by the bank commissioner as statutory receiver. In this instance such a receivership actually ensued. For the purposes of the present inquiry as to the rights of a creditor of the trust company, we are unable to distinguish between the original custody of its assets by the bank commissioner under the Emergency Banking Law and their continued possession by the same official in his receivership capacity. The effect of each custody was identical in protecting the assets of the institution from the effort of any creditor to secure a lien upon them by legal process. By section 9 of article 11 of the Code, under which the bank commissioner took control of the trust company as receiver, it is provided that upon the posting of notice of that action, "the property, assets and business" of such an institution "shall be considered to be in the possession of the Bank Commissioner, which fact shall operate as a bar to any and all attachments, liens, executions or distraints of any kind, and shall also operate to place the assets of said institution in the hands of said Bank Commissioner, as receiver, the same as if he had been appointed by an order of court."

So far as the Maryland assets of the Baltimore Trust Company are concerned, it is clear that none of its creditors could acquire any preferential right after the Emergency Banking Law became effective on March

4th, 1933. The principle of equality among creditors must apply to the distribution of its assets under the Maryland law. According to the receiver's theory, it would not be consistent with that principle to ignore the fact that one of the claimants in this jurisdiction has by attachment in another state appropriated funds of the trust company there exposed to such process.

The New York attachment of General Motors Corporation was not only levied after the Baltimore Trust Company was in the custody of the bank commissioner of Maryland, but the suit was prosecuted, with knowledge of that fact, to an effective judgment rendered after the bank commissioner's custody of the trust company had continued for a period of more than eight months. The judgment thus obtained is not in the position of an antecedent lien or security which might be simply applicable to the reduction of the creditor's claim without affecting his right to receive dividends on the balance ratably and simultaneously with other claimants, as in the cited cases of *Third Nat. Bank v. Lanahan*, 66 Md. 461, 7 A. 615, and *National Union Bank v. Nat. Mechanics' Bank*, 80 Md. 371, 30 A. 913.

From *Am. L. Inst. Restatement, Conflict of Laws*, we quote as follows: "Sec. 558. In the payment of creditors of an insolvent estate the court in each state will, so far as possible, secure *pro rata* payments of all claims." "Sec. 559. If the entire estate is insolvent the court in each state in paying claimants who have proved their claims therein will pay only such proportion of each claim as, added to what the creditor has theretofore received in other states, will put him on an equality with the other creditors paid in the local court." Those paragraphs of the Restatement refer to distributions under receiverships. But, as already stated, the bank commissioner's custody under the Maryland Emergency Banking Law was equivalent to that of a receiver with respect to such a question as the one now under discussion, and became an actual receivership custody for

the purpose of liquidation. In *Ward v. Connecticut Pipe Mfg. Co.*, 71 Conn. 345, 41 A. 1057, the principle of equalization as between general claimants in the home jurisdicton and a creditor acquiring a preferential lien elsewhere was applied under conditions comparable with those described in the present record.

In our opinion the receiver in this case is entitled to defer the payment of any dividends, subsequent to those already paid, on the claim of General Motors Corporation, until the other creditors are equalized proportionately with respect to the amounts which it has derived from the trust company's assets in New York and Maryland. This conclusion is compatible with the full faith and credit to which the New York judgment is entitled. In regard to the provision of the Federal Constitution (article 4, section 1), that full faith and credit "shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State," the Supreme Court said in *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 133, 32 S.Ct. 641, 645, 56 L.Ed. 1009, 1023: "The effect of this clause is to put the judgment of a court of one state, when sued upon, or pleaded in estoppel, in the courts of another state, upon the plane of a domestic judgment in respect of conclusiveness as to the facts adjudged." It was said by the court in *Huntington v. Attrill*, 146 U.S. 657, 685, 688, 13 S.Ct. 224, 234, 36 L.Ed. 1123, 1134, that article 4, section 1, of the Constitution and the pursuant Act of Congress (R.S. sec 905, 28 U.S.C.A. sec. 687) do not "put the judgments of other states upon the footing of domestic judgments to be enforced by execution; but they leave the manner in which they may be enforced to the law of the state in which they are sued on, pleaded, or offered in evidence." In *Cole v. Cunningham*, 133 U.S. 107, 112, 10 S.Ct. 269, 270, 33 L.Ed. 538, 541, the court said that the Constitution "did not make the judgments of the states domestic judgments, to all intents and purposes, but only gave a general validity,

faith, and credit to them as evidence. No execution can be issued upon such judgments without a new suit in the tribunals of other states; and they enjoy, not the right of priority or privilege or lien which they have in the state where they are pronounced, but that only which the *lex fori* gives to them, by its own laws, in their character of foreign judgments. *McElmoyle v. Cohen,* 13 Pet. 312, 328, 329 [10 L.Ed. 177]; *D'Arcy v. Ketchum,* 11 How. 165 [13 L.Ed. 648]; *Thompson v. Whitman,* 18 Wall, 457 [21 L.Ed. 897]; *Pennoyer v. Neff,* 95 U.S. 714 [24 L.Ed. 565]; *Wisconsin v. Pelican Ins. Co.,* 127 U.S. 265, 292, 8 S.Ct. 1370 [32 L.Ed. 239]; *Christmas v. Russell,* 5 Wall. 290 [18 L.Ed. 475]; *Story, Const.* sec. 1303 et seq.; and *Story, Conflict of Laws,* sec. 609."

The efficacy of the New York judgment is not disregarded, but is definitely recognized by a requirement that the fact of its rendition and the results it secured shall be given consideration upon the question as to the equitable distribution among all the creditors of the funds available for them in this jurisdiction. That question could not have been involved in the New York suit nor concluded by the resulting judgment, but is determinable according to the law of this forum when the claim of the judgment creditor is presented here for participation in the local funds.

The computation in the brief of General Motors Corporation should be adopted as the correct method of determining the amount of the third dividend to be allocated to its claim and to be retained for the purposes of the equalization which we have found to be justly requisite. According to that method of calculation, the amount to be thus allowed or reserved is $24,650.51. It does not seem to us equitable that the amount eventually recovered by General Motors Corporation under its attachment levied in New York on March 8th, 1933, should be charged against its claim as of that date, when the attachment suit was being contested by the bank commissioner, and the attached fund was not actually col-

578

lected until November 16th, 1933, a time subsequent to the date of the two dividends which its earlier application would reduce.

*Decree reversed and cause remanded for a decree in conformity with this opinion, the costs of the cross-appeals to be paid by the appellants equally.*