JOLLY, Etc. *v.* FIRST UNION SAVINGS & LOAN, INC.

[No. 297, September Term, 1963.]

162

*Decided June 4, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Francis N. Iglehart, Jr.,* with whom was *Sidney C. Miller, Jr.,* on the brief, for the appellant.

*Richard A. Reid,* with whom were *Kenneth C. Proctor,* and *Proctor, Royston & Mueller,* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

This appeal represents another episode in the large volume of litigation which has arisen following the recent failure of several savings and loan associations.

Between October 9, 1961, and January 10, 1962, the appellant, Raymond G. Jolly, as trustee for Laymen's Home Missionary Movement in Philadelphia, deposited in the appellee, First Union Savings & Loan, Inc., a newly formed Maryland savings and loan association, sums of money totaling $10,-000.00. The money was deposited in a savings share account and thus the appellant became what is known as a free shareholder of the association. On May 22, 1962, the appellant executed a withdrawal order for $9,800.00 and mailed it and his pass book to the appellee, which received them on May 24, 1962. The order was not honored on the asserted ground that it was not on the withdrawal form prescribed by First Union, although it appears that Jolly was not notified of the rejection at that time. A week later, on May 31, 1962, the State of Maryland,

by its Attorney General, filed a petition on the equity side of the Circuit Court for Baltimore County asking for the appointment of a receiver for First Union and for the forfeiture of its charter for alleged violations of State law in the conduct of its business. On the same day, the equity court passed an order "freezing" the assets of First Union, one provision of which enjoined it from paying out any sums of money on free share accounts. On June 6, 1962, the vice-president of First Union wrote Jolly, returning his pass book and withdrawal order and informing him of the "freeze" and the pending equity case. On July 24, 1962, the equity court appointed a conservator for First Union and, on August 21, 1963, a receiver was appointed after an appeal had been taken to this Court. *First Union v. Bottom,* 232 Md. 292, 193 A. 2d 49 (1963).

In the meantime, after the appellant had learned that his withdrawal order would not be accepted, he filed a summary judgment action against First Union in the Circuit Court for Baltimore County, at law, on June 29, 1962, to recover $9,800.00 from his account. The law court, on July 26, 1963 (which was after the equity court had appointed a conservator for the appellee but before the appointment of the receiver), entered a judgment for costs in favor of First Union, holding that the equity court's assumption of jurisdiction over the affairs of First Union deprived the law court of jurisdiction in Jolly's suit. After stating that it felt "persuaded that multiplicity of litigation is frowned upon by the Courts", the court advised the appellant that he still had the opportunity to file a petition for priority of payment in the receivership proceeding on the equity side of the court. This appeal by Jolly is from the law court's judgment.

Claiming error in the disclaimer of jurisdiction, the appellant has attempted to limit this appeal solely to the question of jurisdiction of the law court, stating in his brief that "there is not at issue here the question of the appellant's rights as a withdrawing depositor and whether the action taken by him prior to the appointment of a receiver over the appellee entitled him to the position of a judgment creditor." On the other hand, the appellee has maintained both in the lower court and here, first, that the law court's jurisdiction was ousted, or at least

suspended, by the prior equity proceeding; and second, that even if the law court had jurisdiction, the appellant is not in the position of a creditor and therefore was not entitled to a judgment against the appellee association which would have the effect of giving him priority over the remaining shareholders in the distribution of the appellee's assets.

Since the lower court based its judgment for the appellee upon its disclaimer of jurisdiction, it did not decide whether the actions of the appellant placed him in the position of a creditor. (The trial judge did state as dicta in his memorandum opinion, however, that "This member of the Court would find as facts (if Law had jurisdiction) that: * * * c. Payment should have been made when requested; d. Plaintiff would be entitled to judgment if this Court had jurisdiction." Thus, the reason for the appellant's attempt to exclude any consideration of the merits on this appeal is apparent.) While ordinarily this Court will not rule on questions which were not decided by the lower court, Maryland Rule 885 permits us to decide questions presented to, but not ruled upon, by the trial court, in order to provide guidance to it or to avoid the expense and delay of another appeal. For a recent case in which the rule was applied, see *Kent v. Mer.-Safe Dep. & Tr. Co.,* 225 Md. 590, 593, 171 A. 2d 723 (1961). If we were to hold, as the appellant urges, that the law court had jurisdiction, and reverse and remand, without reaching the question of whether the appellant is in the position of a creditor, it is highly likely that there would be another appeal to this Court, after the law court had ruled on the merits of the appellant's claim. Therefore, in order to avoid the expense and delay of another appeal to this Court, we will consider the question of whether the actions of the appellant were sufficient to entitle him to a judgment as a creditor of the appellee. Cf. *Lee v. County Board of Appeals,* 235 Md. 38, 200 A. 2d 159 (1964).

The appellant contends that since a receivership proceeding is generally regarded as an action *in rem,* whereas a suit at law in contract is an action *in personam,* a law court has jurisdiction to determine the rights of a creditor of an insolvent debtor, even after receivership proceedings have been instituted in equity against the debtor. To support this contention the ap-

pellant has relied mainly upon *Riehle v. Margolies,* 279 U. S. 218, 73 L.Ed. 669 (1929) ; *Chicago Title and Trust Co. v. Fox Theatres Corporation,* 69 F. 2d 60 (C.A.2, 1934) ; Anno. 91 A.L.R. 996; and 75 C.J.S., *Receivers,* sec. 131(b). We note, however, that the authorities cited deal with the relationship of creditor and debtor; if that relationship did not exist in the instant case, those authorities would not seem to be in point. As a secondary argument, the appellant contends that the appellee waived any possible objection to the jurisdiction of the law court by submitting to its jurisdiction in the first instance, and only raising the issue of jurisdiction later in the case. The appellant points out that although a fundamental want of jurisdiction of the subject matter cannot be waived, where a court has general jurisdiction of the subject matter a lack of jurisdiction over the particular case may be waived, citing *Moore v. McAllister,* 216 Md. 497, 512, 141 A. 2d 176 (1958). In answer to this argument the appellee maintains that the appellant was not a creditor but a free shareholder and that therefore the equity court acquired jurisdiction over First Union and the subject matter, Jolly's free share account, and hence over Jolly. Such jurisdiction having attached, it is argued, the law court had no jurisdiction in the fundamental sense to entertain Jolly's subsequent suit, and consequently failure of First Union to object initially did not confer jurisdiction on the law court.

However, since we have decided to answer the question of whether the appellant is in the position of a creditor and thus entitled to a judgment against the appellee, it is not necessary for us to decide, in the present appeal, either of the jurisdictional questions raised by the appellant. For, even if we assume, without deciding, that the law court had jurisdiction over the subject matter and the parties in the appellant's suit, or that objection to jurisdiction could be and was properly waived, nevertheless we must conclude that the appellant cannot prevail and that the judgment entered for the appellee must be sustained. Under the law of Maryland, the appellant did not change his status from that of a free shareholder to that of a creditor by giving notice of withdrawal prior to the institution of the receivership proceedings, and hence, under the facts presented here, he was not entitled to obtain a judgment which would give

him a preference over the other free shareholders. Cf. *Family Savings v. Stewart,* 232 Md. 424, 430, 194 A. 2d 118 (1963).

In the case of *Steinberger v. Savings Asso.,* 84 Md. 625, 634, 36 Atl. 439 (1897), it was stated that the membership of free shareholders in a building association "does not terminate until the notice [of withdrawal] has been given and accepted, and, *until then,* they could not assume the position of *creditors."* (Emphasis in original). In *Cook v. Emmet Bldg. Assn.,* 90 Md. 284, 44 Atl. 1022 (1899), this Court cited with approval *Chapman v. Young,* 65 Ill. Appeals 131, where it was held that shareholders of an insolvent building association, who had given notice of withdrawal before a judicial declaration of insolvency, were not entitled to priority of payment in the distribution of the association's assets, as a general creditor would be, but were only entitled to payment *pari passu* with the non-withdrawing shareholders. See also Anno., 98 A.L.R. 89, at 111 *et seq.;* 13 Am. Jur. 2d, *Building and Loan Associations,* sec. 34.

In 1961 the Legislature adopted a comprehensive statute to regulate the affairs of building, savings and loan associations, its provisions being now codified as Code (1963 Cum. Supp.), Art. 23, secs. 161A to 161AAA, inclusive. Sec. 161X [1] of the 1961 statute regulates the matter of withdrawals by free shareholders of their free share accounts. Subsection (a) of that section provides in essence that a free shareholder may make written application for withdrawal of all or part of his account at any time; that the association shall either pay, or number, date and file the application in the order of receipt, payment to be made, in the order of receipt, of the value of the account as determined by the board of directors; and that an association shall not pay some applications in full unless it pays every one on file in

---

1. At the time the appellant deposited his money and at the time he filed the suit at law, the statute in effect was Art. 23, sec. 160X (Laws of Maryland 1961, Special Session, Ch. 1). However, sec. 160X has now been superseded by Art. 23, sec. 161X (Laws of 1961, Ch. 205). Since only the latter appears in the 1963 Supplement to the Annotated Code, and because the language is identical, reference is made to Art. 23, sec. 161X for convenience. See editor's note under Code (1963 Cum. Supp.), Art. 23, sec. 161A; and see *First Continental v. Director,* 229 Md. 293, 183 A. 2d 347 (1962).

full, except by paying all applications on file on the ratable or prorata plan prescribed by subsection (b) of the section. Subsection (a) then negates the status of creditor for a withdrawing account holder by stating that "Free shareholders who have filed written application for withdrawal shall remain free share members as long as their applications remain on file."

Subsection (b) of sec. 161X establishes a ratable or prorata plan of withdrawals. It provides that on the first day of each month, each application which has been on file since the first day of the preceding month shall be paid its ratable or prorata share; that at least one-third of the receipts of the association from its members during the preceding calendar month, exclusive of interest and expense account payments, shall be applied on the first day of each month to the payment of applications which have been on file since the first day of the preceding month; and that such limited plan of payment shall continue as long as there are applications unpaid. Subsection (b) then provides:

"* * * Such withdrawing members shall not at any time be deemed creditors of said association, either before or after the notice to withdraw, and said withdrawing members shall have no right of action at law or in equity against said association for the repayment of any amount sought to be withdrawn unless and until a default shall occur in said payments as provided for above, and then only at law, and to the extent of the secured payments due as above provided."

It is apparent that the conditions precedent to the appellant's right to sue at law, as established by sec. 161X, were never met. Even if it be assumed, without deciding, that the form of the appellant's withdrawal application was sufficient under the section, there was no showing that in the week between the receipt of the application and the "freeze" order in the equity case the board of directors of the association had an opportunity to meet in order to determine the value of the appellant's account, as provided in subsection (a), or to decide whether the association could pay the appellant's account in full, or on the other hand whether it was necessary or desirable to invoke the

prorata plan of withdrawal prescribed by subsection (b). Nor was there any showing that during the same week a prorata plan of withdrawal was in fact established, and thus the right to sue at law (for a default by the association in prorata payments) provided by the portion of subsection (b) quoted above, never came into being. After the passage of the "freeze" order it became impossible for the association to take any of the actions mentioned.

In view of the express provisions of subsections (a) and (b) of sec. 161X—that "free shareholders who have filed written application for withdrawal shall remain free share members as long as their applications remain on file", and that "such withdrawing members shall not at any time be deemed creditors of said association, either before or after the notice to withdraw," we hold that under the facts presented the appellant was not entitled to maintain his suit as a creditor to obtain a judgment which would give him priority over the remaining free shareholders of the appellee.

*Judgment affirmed; appellant to pay the costs.*