# FAMILY SAVINGS AND LOAN ASSOCIATION SHAREHOLDERS' PROTECTIVE COMMITTEE ET AL. *v.* STEWART ET AL.

[No. 87, September Term, 1965.]

*Decided January 4, 1966.*

The cause was argued before Prescott, C. J., and Horney, Marbury, Barnes and McWilliams, JJ.

*H. Don Cummings,* with whom were *Irving A. Levine* and *Miller, Cummings & Roberts* on the brief, for the appellants.

*David S. Weinberg,* with whom were *Manuel M. Weinberg, Seymour B. Stern, R. Edwin Brown* and *Weinberg & Weinberg* on the brief, for the appellees.

Marbury, J., delivered the opinion of the Court.

This is the second appeal by Family Savings and Loan Association Shareholders' Protective Committee, et al., appellants, from a decree of the Circuit Court for Montgomery County, in favor of Howard Stewart, et al., appellees, representatives of Christmas Club and other club account holders, in the insolvent Family Savings and Home Loan Association, Inc. (Association).

On October 27, 1961, pursuant to a petition filed by the State of Maryland alleging the Association to be insolvent, the Circuit Court for Montgomery County appointed a receiver. The appellees, on January 10, 1962, filed a petition in the Circuit Court for declaratory relief, requesting that they, the club account depositors, be given a preference over savings share depositors in the distribution of the assets of the Association. This resulted in a decree of the Circuit Court granting them the preference requested. On appeal, in *Family Savings v. Stewart*, 232 Md. 424, 194 A. 2d 118, decided October 9, 1963, we affirmed the action of the lower court. Pursuant to the mandate of this Court and decree of the Circuit Court, the receiver, on April 1, 1964, paid the appellees the principal sums due them plus interest at the rate of four and one-half per cent (the contract interest rate) on such sums to the date of the appointment of the receiver. On November 20, 1963, appellees petitioned the Circuit Court for an amendment of its final decree to include the payment of post-receivership interest to them at the rate of four and one-half per cent from December 1, 1960, to the date of final distribution, prior to the distribution of any assets to savings share depositors. Their second petition on August 18, 1964, was orally amended in open court so as to provide for post-receivership interest at the rate of four and one-half per cent from the date of the appointment of the receiver to January 10, 1963, the date of the decree of the Circuit Court granting appellees a preference; and six per cent interest from January 10, 1963, to the date on which payment was made to the club account holders, April 1, 1964. In the lower court it was undisputed that the receivership estate of the Association did not contain sufficient assets to repay to its savings share depositors the principal of their deposits. Nevertheless the Circuit Court, on February 23, 1965, entered its decree awarding appellees straight six per cent interest from the date of the appointment of the receiver to the date of distribution to appellees, and this appeal followed.

The principal question is whether the lower court was correct in its award of post-receivership interest to the appellees; the practical effect of which was to allow the club account holders an additional twenty per cent over and above the amounts

deposited in their accounts, while the savings depositors, appellants, would receive something less than twenty-five cents on every dollar that they deposited in the Association. Resolving this issue in the appellants' favor requires the answering of two subsidiary questions affirmatively. They are: (1) are the appellants, savings share depositors, creditors of the Association, and (2) if so, are they, as "junior" creditors, entitled to be paid principal before the preferred club account creditors receive post-receivership interest?

In their briefs and in oral argument before this Court, both parties apparently agreed that if the savings share depositors can not be characterized as "creditors" of the Association, then post-receivership interest was properly payable to the club account holders. The appellees argue that the issue of whether the appellants are creditors was answered in the negative on the first appeal. As we see it, that decision resolved only the question whether the club account holders were entitled to priority in the payment of principal over the savings share-depositors. In the course of that opinion the appellees were classified as creditors and they were deemed to have priority in the payment of principal, but we did not say that the savings share depositors could not be, under certain circumstances, creditors of the Association.

While one may state with assurance that a shareholder in an ordinary business corporation is an owner and not a creditor of that corporation, it does not follow that a shareholder in a savings and loan association is to be likewise so characterized. Although possessing some of the attributes of a shareholder in an ordinary corporation, such as the right to vote for the election of officers and directors, as well as the right to share proportionately with their respective interests in its profits and losses, the savings share depositor in a savings and loan association possesses other characteristics not shared by investors in an ordinary corporation. First, the depositor in a savings and loan association may usually pay for his shares by installment deposits in his account, whereas in an ordinary business corporation they must be paid for in full at the time of purchase, and secondly, a savings share depositor has the right to withdraw the amount he has deposited dollar for dollar at any

time up to insolvency or dissolution. In deciding whether these savings share depositors are creditors, the most relevant difference between ordinary stockholders and the shareholders in a savings and loan association is the right to withdraw the funds placed in the association which gives the depositors hybrid creditor-owner characteristics. Commenting on the right of withdrawal, on the first appeal Judge Prescott said for this Court, at 430 of 232 Md.:

> "This latter right makes the shareholder in the association, at least under certain circumstances, a creditor of the association as well as a shareholder thereof. As stated by Justice Holmes in *Atwood v. Dumas*, 21 N. E. 236 (Mass.) : 'But the interest of the member of a corporation of this kind [a co-operative savings fund and loan association] is of a peculiar nature, and it does not follow, because the defendant is a member, that she may not be a creditor also in respect of her money paid in * * *.' See also *Benton's Apparel, Inc. v. Hegna*, 7 N. W. 2d 3 (Minn.), and compare *Morris Resnick B. & L. Ass'n v. Barnes*, 164 A. 358 (Pa. Super.) ; *Aberdeen S. & L. Ass'n v. Chase*, 289 P. 536 (Wash.) ; *Ohio Valley B. & L. Ass'n v. County Court*, 26 S. E. 203 (W. Va.) ; *In re Western States B-L Ass'n*, 50 F. 2d 632 (D. C., Cal.)."

The hybrid creditor-owner characteristics of the savings share depositor is also evidenced by the Maryland rule as to the insolvency of a savings and loan association as compared to the test for insolvency of an ordinary corporation, *i. e.*, in the former insolvency is deemed to be present when the association is unable to pay its general creditors and its savings share depositors dollar for dollar the money contributed by its shareholders, whereas the latter is insolvent when its assets are insufficient to pay its creditors, regardless of its assets in relation to the amount of money invested in the corporation. *Wyman v. McKeever*, 239 Md. 130, 210 A. 2d 537.

Further support for appellants' contention that the savings share depositors are, under these circumstances, creditors, can be found in the California case of *In Re Pacific Coast Building-*

*Loan Ass'n*, 99 P. 2d 251. The case involved an insolvent building and loan association which had three classes of investors: guarantee stockholders, membership shareholders, and investment certificate holders. In that case the guarantee stockholders were recognized by all to be like investors in an ordinary corporation, inasmuch as they could not withdraw their investments and under the association's by-laws they had the major voice in election of the officers and directors. The contest in that case was between the investment certificate holders who claimed a right to receive interest (accruing after the state's building and loan commissioner had taken over the business) before the membership shareholders were entitled to get the amount of their principal. The only significant difference between the free shareholders in the California case and the present appellant savings share depositors is that the latter are not backed up by a third group of guaranteed stockholders who have the major voice in management. The membership shareholders in that case were otherwise remarkably similar to the appellants here in that they both had the right to vote for officers and directors of the association, they both shared in the profits of the association and they both had the right to withdraw their deposits before insolvency. Likewise, the investment certificate holders were strikingly similar to the appellees, holders of the club accounts, in the present case. The club account holders in this case were not permitted to make partial withdrawals and could not make total withdrawals, without proper excuse, before the time named for the fiftieth weekly deposit. All club accounts were paid the same "dividend or interest" rate of four and a half per cent compounded quarterly. In the California case those with investment certificates had a type of promissory note ranging in duration from one to three years with no dividends payable but realizing a fixed sum of interest. Under these circumstances the California Supreme Court stated at page 255 of 99 P. 2d that:

> "The investment certificate holder is without doubt a preferred creditor, but this does not make the membership shareholder any less a creditor, though an inferior one. In short, it appears that the membership shares are fundamentally similar to the investment certificates,

and the differences noted are not of such significance as to overcome this similarity, in respect of the rights of the investor against the association. We conclude that the membership shareholders are *creditors* of the association." (Emphasis supplied.)

Other cases which are cited by the California court which recognize that a shareholder in a building and loan association might, under certain circumstances, be a creditor are *In Re Guaranty Building and Loan Ass'n,* 49 F. 2d 776, (D. Cal.), and *Mott v. Guardian Building & Loan Ass'n,* 14 P. 2d 447 (Ore.). The Court then concluded that all creditors should receive principal before the investment certificate holders received interest accruing after the state's building and loan commissioner had taken over the business.

While there are no Maryland cases dealing specifically with the issue of allowance of post receivership interest to priority creditors over free shareholders, the recent case of *Wolf, Receiver v. Crystal,* 239 Md. 22, 209 A. 2d 920, does recognize that free shareholders can be creditors. In *Wolf* we allowed a free shareholder savings depositor who had borrowed money from a savings and loan association to set off the amount of that loan against the amount deposited in the savings account. Recognition of the right to set off the amount of the loan to a borrowing member by necessary implication recognized the creditor status of the savings depositor since set off connotes a debt on two sides and a corresponding creditor on each side, one of whom was the savings depositor-free shareholder who had requested the set off.

In view of our decision in *Wolf* and the decision reached by the Supreme Court of California in the case of *In Re Pacific Coast Building-Loan Ass'n, supra,* we feel justified in treating the appellants as creditors, albeit junior to the club account holders, of the Association. In a case such as this equitable considerations are of great importance. Justice Black, for the Supreme Court of the United States, stated the applicable rule in *Vanston Bondholders Protect. Com. v. Green,* 329 U. S. 156, 165, 91 L. Ed. 162, 167, thusly:

"It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership

and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." (Citing cases.)

Since the appellees have already gotten back every dollar they placed in their club accounts, plus interest up to the time of the receiver's appointment, and the appellant savings share depositors, who, according to their contract with the insolvent association, had the right to withdraw their funds dollar for dollar, will get only about twenty-five cents on the dollar of their deposits if interest is disallowed, and substantially less return per dollar deposited if the post-receivership interest is allowed, it is obvious that the equities of the situation fall heavily on the side of the savings share depositors.

We think the language used in the case of *Jolly v. First Union,* 235 Md. 161, 201 A. 2d 4, is not dispositive of the issue of whether the savings share depositors should be declared creditors since in *Jolly* we were interpreting Code (1963 Cum. Supp.), Article 23, Section 161X, which states that the withdrawing account holders of a saving and loan association, up to the time the money is successfully withdrawn, are not creditors but still free shareholders. The obvious intent of this section was to insure equality of treatment of all free shareholders up to the time funds were actually withdrawn from the association. Such statutory language is irrelevant in determining the right of these savings share depositors (free shareholders) as opposed to the club account holders who were not *sui generis.*

Having decided that the savings share depositors are under the circumstances creditors of the Association, we have no difficulty in concluding that the junior creditors should be paid their principal before the priority creditors receive the demanded interest. The general rule in this country as set forth in Anno. 69 A.L.R. 1210 is that "where assets are insufficient to pay the principal of all claims, interest upon preferred claims is usually disallowed." This Court first adopted that rule in *Casualty Ins. Company's Case,* 82 Md. 535, 582, 34 Atl. 778 (1896), when dealing with the question of allowance of interest on the claims of creditors whose preference was provided for by state statute (taxes, wages and salaries), stating at page 582:

"We think no interest should be allowed on the claim for taxes or on any of the other claims filed against the insolvent company. * * * It is not easy, if indeed it be possible, to place upon a consistent basis many of the decisions in which interest has been allowed or disallowed. Perhaps some of the numerous claims might in strictness be entitled to an allowance of interest under ordinary circumstances; but it does not appear that the amounts asserted to be due have been wrongfully withheld by the Casualty Company. The failure to pay, as far as we can see, has been the result of the company's insolvency. A penalty or damages in the way of interest ought not, therefore, to be added to the sums actually due."

But see *In Re Beckman*, 14 A. 2d 581 (Pa. 1940), and *Bank Com'rs v. New Hampshire Banking Co.*, 74 N. H. 292, 67 Atl. 583 (1907). More recently the general rule was reiterated and succinctly explained in the case of *In Re Inland Gas Corporation*, 241 F. 2d 374, 379-80 (6th Cir. 1957), in the following manner:

"The general rule in bankruptcy and in equity receiverships has been that interest on the Debtors' obligations ceases to accrue at the beginning of proceedings. This is based upon reasoning that interest is a penalty for delay in payment, and where the power of the debtor to pay his contractual obligations is suspended by law, interest during suspension may not be accrued, if the courts are properly to preserve and protect the estate for the benefit of all interests involved.

"Whether interest should be allowed upon claims against the bankrupt Debtors is, we think, no longer to be determined by their relative dignity, in the light of the Saper case. Our decision must be reached by balancing the equities * * *." (Citing *Vanston, supra.*)

We think the lower court erred in decreeing that post-receivership interest be paid to the club account holders.

*Decree reversed, costs to be paid by the appellees.*