254 Md. 532 (1968)
255 A.2d 39
REPUBLIC REALTY COMPANY, ET AL.
v.
PHOENIX SAVINGS AND LOAN ASSOCIATION, INC.
[No. 340, September Term, 1968.]
Court of Appeals of Maryland.
Decided July 2, 1968.
The cause was argued before HAMMOND, C.J., and MARBURY, BARNES, FINAN, SINGLEY and SMITH, JJ.
Charles C.W. Atwater, with whom were David A. Carney and Mylander & Atwater on the brief, for appellants.
Submitted on brief by Clarence W. Sharp for appellee.
SMITH, J., delivered the opinion of the Court.
The sole question presented in this appeal is whether the chancellor erred in denying interest to appellants (Republic) on the claims which we determined to be legitimate ones against appellee (Phoenix) in Republic v. Phoenix S. & L. Ass'n, 250 Md. 549, 243 A.2d 858 (1968). The plan of reorganization for Phoenix provided for payment of fixed percentages of the prior free share savings accounts on specified dates. Because of the contest relative to the claims of Republic these sums were not paid to Republic on those dates when the holders of other valid free share accounts were paid. The sum claimed by Republic in interest is $5976.02. We shall reverse the action of the chancellor, who, despite the admonition of Maryland Rule 18 c, gave no reason for his ruling.
Phoenix relies on the holding of this Court in Family Savings v. Stewart, 241 Md. 89, 215 A.2d 726 (1966). There the holders of club accounts (Christmas and vacation *534 accounts) had been determined in Family Savings v. Stewart, 232 Md. 424, 194 A.2d 118 (1963), to be entitled to a preference over free shareholders, since the free shareholders were members of the association entitled to attend and participate in annual meetings, to vote for the directors and generally to supervise and manage the affairs of the association, while the holders of the club accounts had no such right or privileges. In the 1966 case these holders of club accounts sought to recover interest before payment was made to free share account holders. This Court determined that under the circumstances the savings share depositors were creditors of the association and that they should be paid their principal before the priority creditors received the demanded interest. Judge Marbury there said for the Court:
"The general rule in this country as set forth in Anno. 69 A.L.R. 1210 is that `where assets are insufficient to pay the principal of all claims, interest upon preferred claims is usually disallowed.' This Court first adopted that rule in Casualty Ins. Company's Case, 82 Md. 535, 582, 34 Atl. 778 (1896), when dealing with the question of allowance of interest on the claims of creditors whose preference was provided for by state statute (taxes, wages and salaries), stating at page 582:
`We think no interest should be allowed on the claim for taxes or on any of the other claims filed against the insolvent company. * * * It is not easy, if indeed it be possible, to place upon a consistent basis many of the decisions in which interest has been allowed or disallowed. Perhaps some of the numerous claims might in strictness be entitled to an allowance of interest under ordinary circumstances; but it does not appear that the amounts asserted to be due have been wrongfully withheld by the Casualty Company. The *535 failure to pay, as far as we can see, has been the result of the company's insolvency. A penalty or damages in the way of interest ought not, therefore, to be added to the sums actually due.'
But see In Re Beckman, 14 A.2d 581 (Pa. 1940), and Bank Com'rs v. New Hampshire Banking Co., 74 N.H. 292, 67 Atl. 583 (1907). More recently the general rule was reiterated and succinctly explained in the case of In Re Inland Gas Corporation, 241 F.2d 374, 379-80 (6th Cir.1957), in the following manner:
`The general rule in bankruptcy and in equity receiverships has been that interest on the Debtor's obligations ceases to accrue at the beginning of proceedings. This is based upon reasoning that interest is a penalty for delay in payment, and where the power of the debtor to pay his contractual obligations is suspended by law, interest during suspension may not be accrued, if the courts are properly to preserve and protect the estate for the benefit of all interests involved.
`Whether interest should be allowed upon claims against the bankrupt Debtors is, we think, no longer to be determined by their relative dignity, in the light of the Saper case. Our decision must be reached by balancing the equities * * *.' (Citing Vanston, supra.) [329 U.S. 156, 91 L.Ed. 162, 67 S.Ct. 237 (1946)]
"We think the lower court erred in decreeing that post-receivership interest be paid to the club account holders." Id. at 97-98.
Family Savings is distinguishable. It was the general rule which was there stated. In Family Savings one class of creditors was seeking interest before another class was paid anything. Here we have creditors of the same class, *536 most of whom received their dividends years ago, while Republic, entitled to the same dividend, is only now receiving that dividend.
The leading case dealing with this precise issue is Armstrong v. American Exchange Bank, 133 U.S. 433, 470, 10 S.Ct. 450, 33 L.Ed. 747 (1890) wherein it is stated:
"In both of the cases it is claimed that the court erred in adjudging that the plaintiff was entitled to interest on the 25 per cent dividend on its claim, from October 31, 1887, until the time the dividend should be paid. * * * In the present case, the claims of the plaintiff, as allowed, do not include interest beyond the date when the bank failed. Interest upon the dividend which it ought to have received on the 31st of October, 1887, is a different matter. The allowance of that interest is necessary to put the plaintiff on an equality with the other creditors."
The Armstrong case, supra, was commented on by way of dictum, in Ticonic Bank v. Sprague, 303 U.S. 406, 411, 58 S.Ct. 612, 82 L.Ed. 926 (1938) where it was stated:
"It is in order to assure equality among creditors as of the date of insolvency that interest accruing thereafter is not considered. But interest is proper when the ideal of equality is served, and so a creditor whose claim has been erroneously disallowed is entitled on its allowance to interest on his dividends from the time a ratable amount was paid other creditors." (citing Armstrong, supra)
See also General American Life Ins. Co. v. Anderson, 156 F.2d 615, 620 (6th Cir.1946) quoting Ticonic, supra, verbatim, relying on Armstrong, supra, as ultimate authority for the proposition that interest be allowed.
Likewise in Dunnagan v. Best, 59 F.(2d) 795, 796-97 (D.C.W.D. Tex. 1932) it was said:

*537 "[I]nterest as provided for in the face of the note should be denied from the date of the closing of the bank, on the authority of such cases as White v. Knox, 111 U.S. 784, 4 S.Ct. 686, 28 L.Ed. 603, and the authorities following it. This last statement, however, is subject to the exception that, in my opinion, interest should be allowed at the legal rate on the amount of the dividends which the plaintiff would have received if she had been paid at the time the other creditors were paid. While there is very respectable authority to the effect that the other creditors of the bank should not suffer or be penalized by reason of the misfeasance or mistake of the receiver, still I am inclined to think that, in order to place the plaintiff on a parity with the other creditors, she is entitled to receive interest on the amount of dividends which she should have received, from the time they should have been paid to her. This clearly appears to be the ruling of the Supreme Court in Armstrong v. American Exchange Bank, 133 U.S. 433, 10 S.Ct. 450, 33 L.Ed. 747."
For a recent case dealing with this issue, see Bryant v. B. & L. Farms Co., 343 F.2d 581, 583 (5th Cir.1965), which cites the Armstrong principle and concludes:
"It is well to observe that we are not here dealing with interest on claims in bankruptcy, but interest on dividends withheld after creditors of the same class had been paid the dividends due them.
"* * * [I]t is equitable and just and in line with the better-reasoned authority that interest at the legal rate be paid on the dividends withheld to the extent that funds are available to pay such interest. In no other way can appellants be put upon a footing with other creditors who received their dividends." (emphasis in original)
*538 This position has been expressly adopted in New York; see People v. E. Remington & Sons, 12 N.Y.S. 829, 830, 59 Hun. 307 (1891), affirmed without opinion in 126 N.Y. 679 (1891) where it was said:
"When the payment of a dividend is deferred by reason of an unsuccessful contest of a claim, the creditor so delayed should be allowed interest on the dividend. Armstrong v. Bank, 133 U.S. 433, 470, 10 Sup. Ct. Rep. 450."
See, also, Commonwealth v. Nat. Surety Co., 349 Pa. 599, 612, 37 A.2d 753 (1944) which likewise adopted the Armstrong principle, where it was said:
"We are of the opinion, therefore, that the $25,000 paid by the Liquidator to the Clerk did not satisfy the claim, but that there should have been paid thereon the same 50% dividends as other creditors received, calculated on the full amount of $75,000 and continuing until such dividends amounted to three fourths of the amount of the bankruptcy deposits as reduced by the dividends paid by the Receiver of the bank. We are also of opinion that interest should be allowed on the dividends from the respective times they were paid to other creditors of National Surety Company but withheld on the present claim, with an appropriate credit, of course, for interest on the $25,000 which was paid: People v. E. Remington & Sons, 12 N.Y.S. 829, affirmed 126 N.Y. 679, 28 N.E. 249; In re Carnegie Trust Company, 161 App. Div. 280, 284, 146 N.Y.S. 809, 812, 813; Armstrong v. American Exchange National Bank of Chicago, 133 U.S. 433, 470; 32 C.J. 897, Sec. 203."
See 75 C.J.S. Receivers, § 310 for a statement of the Armstrong principle.
The same general idea prevailed in John D. Hospelhorn, *539 Receiver v. General Motors Corporation, 169 Md. 564, 182 A. 442 (1936). There this Court was faced with some of the problems which arose from the banking crisis of 1933. General Motors had funds on deposit with the Baltimore Trust Company. There was an agreement that when the account exceeded such figure as the depositor should designate from time to time the bank was to telegraph the excess amount to a New York bank. On February 17 a letter was mailed by General Motors to Baltimore Trust reducing the limits previously specified for its account and thus imposing upon that bank the duty to telegraph the excess over $90,000.00. The notice was received on February 20. The sum which should have been transmitted was in excess of $125,000.00. The letter received no attention prior to the time when all Maryland banks were closed by proclamation of the Governor of Maryland. The bank was placed in the custody of the Bank Commissioner on March 4, 1933. General Motors sued in New York. Through its assignee it recovered a judgment and attached funds of Baltimore Trust in New York. A plan was effected for the reorganization of Baltimore Trust Company with the formation of Baltimore National Bank as its successor in part. Certificates of indebtedness were issued for a certain portion of the deposits. The Bank Commissioner directed the trust company to withhold from General Motors Corporation dividends on its certificate of indebtedness until the amount of the dividends equaled the sum General Motors obtained by attachment in New York. A receiver was ultimately appointed for Baltimore Trust Company and the question of what should be paid to General Motors came before the Circuit Court No. 2 of Baltimore City. Our predecessors said:
"An affirmance of the decree in this case would, in practical effect, assure to General Motors Corporation, as a depositor of the Baltimore Trust Company, a permanent preference in the distribution of its assets among its creditors. *540 The money procured by the New York attachment would normally have been distributable to all of the creditors ratably in the course of the trust company's liquidation. While there is no question as to the propriety of the attachment suit, nor as to the validity and effectiveness of the resulting judgment, the important fact is that one of the trust company's creditors thereby secured the exclusive benefit of funds in which its other creditors would ordinarily have had an equal interest, and the question is whether such an appropriation should be disregarded when the creditor obtaining it proposes to participate equally with other depositors in the distribution of the funds in this state realized from the insolvent bank's remaining assets." Id. at 573.
And at page 576 the Court further stated:
"In our opinion the receiver in this case is entitled to defer the payment of any dividends, subsequent to those already paid, on the claim of General Motors Corporation, until the other creditors are equalized proportionately with respect to the amounts which it has derived from the trust company's assets in New York and Maryland."
It will thus be seen that the idea which has prevailed in proceedings of this sort, however inconsistent the decisions may appear at times to be,[1] is that, to the extent possible, all creditors of a given class should be on the same basis and on the same footing. Republic is the same class of creditor as those free shareholders who were permitted to withdraw specified sums each year beginning in 1962 and continuing through 1967. They have had *541 the benefit of the use of their money while Republic has been denied the use of its money pending litigation. We believe it fair and equitable for Republic to be allowed interest on the dividends to which it is entitled from the date those corresponding dividends became payable to other free shareholders.
Order reversed and case remanded for passage of an order in accordance with this opinion; costs to be paid by appellee.
NOTES
[1] See the comment relative to inconsistency by Chief Judge McSherry in Casualty Ins. Company's Case, 82 Md. 535, 582, 34 A. 778 (1896) quoted by Judge Marbury in Family Savings v. Stewart, 241 Md. 89, 98, 215 A.2d 726 (1966).