In re Parks.

(Nos. B68-2167 and B68-2168—Decided September 11, 1968.)

United States District Court for the Northern District of Ohio, Eastern Division.

*Mr. Lorn P. Stevenson,* Trustee in Bankruptcy.
*Mr. Robert E. Swallen,* for Beneficial Finance Company.
*Mr. Kennth W. Ferrell,* for bankrupts.

OPINION AND ORDER

At Canton, Ohio, in this District, on the 26th day of July 1968.

ENSLEY, Referee in Bankruptcy. Each of the bankrupts were adjudicated April 24, 1968. Prior thereto and while residents of Glendale, California, they executed and delivered to Beneficial Finance Company (hereinafter referred to as Beneficial), Glendale, California, a security agreement dated *July 11, 1967,* covering two certain motor vehicles, and ''all of the consumer goods including household furniture, furnishings, carpets, draperies, chinaware and other household goods of every kind now or hereafter owned or hereafter acquired by the debtors in replacement of such consumer goods and now or hereafter located in or about the debtor's place of residence at their addresses shown hereon on the box above on this security agreement.'' Thence followed an itemization of the collateral which included a Packard Bell Model 63 record player, one G. E. TV set, and one Olympic portable TV set, none of which articles were set off as exempt by the trustee, and which are the subject of the application for a turnover order filed by the trustee herein.

On July 17, 1967, Beneficial filed with the County Re-

corder of Los Angeles County, California, a financing statement dated *July 11, 1967* (being the date of the security agreement), which stated it covers "all of the consumer goods, including household furniture, furnishings, carpets, draperies, chinaware and other household goods of every kind now owned or hereafter acquired by debtors * * *."

Subsequently, bankrupts moved from Glendale to Wooster, Wayne County, Ohio, and within four months thereof, on October 16, 1967, Beneficial filed with the recorder of Wayne County, Ohio, a financing statement dated October 9, 1967 (not the date of California financing statement which was dated July 11, 1967), and which bore neither the signature of the debtor or the secured party, but did state "the collateral covered by this financing statement was already subject to a security interest in the state of California recorded in the office records of the Los Angeles County Recorder No. 761155, filed July 17, 1967, at the time it was brought into Ohio." No reference was made therein to the date shown on the California financing statement.

The financing statement filed in Wayne County states: "This financing statement covers the following types (or items) of property: [x] all of the household goods now or hereafter located at the residence of debtors whose address is shown above." The debtor's address was shown in Wayne County, Ohio.

Subsequently bankrupts again moved to Newcomerstown, Ohio, where they resided at the time of their adjudication.

On May 21, 1968, Lorn P. Stevenson, trustee for both bankrupts filed an application for a turnover order of the chattels heretofore referred to naming the Beneficial as a respondent. They answered claiming by reason of the filings hereinbefore referred to they had the first and best lien on the property, and prayed the application for turnover be denied. Neither bankrupt answered, but appeared at the hearing, as did Beneficial, at which time copies of the security agreement and the two financing statements were introduced into evidence, and stipulated to be true and correct copies of the instruments on file.

## Discussion

The security agreement executed in California spelled out in detail each and every item of personal property given as security for the loan made by Beneficial. The financing statement, filed in California, condensed that description and appears to have been sufficient to perfect its security interest in California, as long as the property secured remained there. However, the adequacy of the financing statement filed in Ohio is at issue because (1) It fails to bear the signature of the creditor; (2) the date of the Ohio filed financing statement is at variance with the one filed in California; and (3) there is a variance in the description of the collateral in the Ohio financing statement with the California financing statement.

Here we are concerned solely with "Consumer Goods" as they are defined in Section 1309.07(A), Revised Code, and that is how they are described in the California financing statement. When a debtor moves his consumer goods from a state in which the security interest attached, Section 1309.03(C), Revised Code, provides "the security interest continues perfected in this state for four months and also thereafter if within the four months period it is perfected in this state."

Was the security interest of Beneficial ever perfected in this state?

Where a creditor files in Ohio the financing statement contemplated by Section 1309.03(C), Revised Code, in order to insure the continuity of the perfection of its lien, when its lien had attached at the former situs of the property, the provisions of Section 1309.39, Revised Code, constitute the legislative demands upon a secured party to perfect and protect its security interest. Section 1309.39, Revised Code, contemplates the filing of a copy of the identical financing statement already on file in another jurisdiction, with the permissive exception noted in Section 1309.-39(B), Revised Code, wherein *only the secured party need sign the financing statement*. Apparently the Legislature realized the difficulty of a creditor to again obtain the signature of a debtor to another financing statement, in the event the creditor moved to another jurisdiction, even

though the creditor was advised of the move, so in such case only the secured party was required to sign an Ohio filed financing statement which would have the effect of an attestation of the veracity of the Ohio filed financing statement as it related to a filing in the former jurisdiction.

The California security agreement and financing statement each bear the signatures of the debtors and of the person named as manager of Beneficial. It is noted that on the California financing statement, there is a designated place for the signature of the manager of Beneficial, and of the debtors. No such places for signature appear on the printed form of the Ohio filed financing statement. The debtors and the secured parties are properly identified, but there appears no "signature" or any "writing" on said Ohio filed financing statement. Everything shown thereon is either printed or typewritten, except the official stamp of the Wayne County Recorder.

Section 1301.01(MM), Revised Code, extends the meaning of the word "signed" by stating: " 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing."

"Symbol" is defined in Webster's New Collegiate Dictionary as 2) "In writing or printing, a conventional sign, such as a character, a letter, or an abbreviation, used instead of a word, or words * * *." There is no character, letter or abbreviation present in the financing statement that can be construed as a symbol, and therefore there was no intention shown to authenticate that writing in the absence of a symbol or a signature.

The Maine Uniform Commercial Code used the identical definition of the word "signed" as does Ohio, and there in BK 65-415 ND, *In re Carlstrom,* the bankruptcy court had occasion to construe it. There, the Eastern Trust and Banking Company filed a financing statement. In the relevant part of the printed form were two blank signature spaces which were completed as follows:

"Eastern Trust and Banking Company
By
(signature(s) of Secured Party(ies))"

The holographic signature of the debtor was obtained

to the financing statement, but no holographic signature of any one acting for Eastern Trust and Banking Company was appended to the financing statement. The bank argued the typewritten words of the bank constituted a signature under UCC 9-402 (Section 1309.39, Revised Code), but the court held in a lengthy opinion that:

"In the instant case it is obvious that the bank through oversight omitted signing the financing statement. In the interest of preserving the integrity and reliability of the public record it would seem preferable under these circumstances to call an oversight an oversight instead of a signature." 41 Referee's Journal 22. (Summarized in CCH 61,998.)

The court then held the alleged security interest invalid against the trustee and authorized and directed the sale of the non-exempt property noted in the so-called financing statement.

The instant case evidences a greater degree of oversight on the part of Beneficial than that shown by Eastern Trust. Eastern's printed form showed their corporate name, and lines for signature(s) of their agents under its corporate name. No evidence of that intention is present in this case.

The lien of Beneficial therefore was not preserved and continued here in Ohio by its failure to sign the Ohio filed financing agreement.

Beneficial also attempted to continue the perfection of its security interest by filing in Ohio a financing statement, the date of which was at variance with the financing statement filed in California. Section 1309.39, Revised Code, in defining the formal requirements of a financing statement, nowhere requires that it bear any date, but if a date is placed thereon, it is a representation of fact, and if that representation is false, it assumes some significance especially if filed in another jurisdiction where the original security agreement is not of record, while attempting to continue the perfection of a security interest in Ohio. The Ohio financing statement should have set forth the identical date as contained in the California filing. Palpably the

financing statement filed in Ohio was a falsified financing statement, and this is no minor error as contemplated in Section 1309.39(E), Revised Code, as it reflects on the veracity of the creditor and shows the carelessness used in its preparation by their failure to compare it with the one filed in California. The filing of such a falsified financing statement does not continue the perfection of a secured interest in Ohio.

Attention is called to the variance of the description of the Ohio filed financing statement which limits the coverage to household goods, as compared with the descriptions used in the security agreement and the California financing statement. This court would conclude that where a creditor desired to continue the perfection of a security interest created in another jurisdiction, the creditor should file in Ohio a financing statement using the identical description filed in the original jurisdiction.

Beneficial has cited in its brief several cases relative to the adequacy of the description of its collateral. As far as they are concerned that issue is moot because they failed to continue the perfection of their security interest, but it must be discussed further insofar as it relates to the claim of Leo Curtis Parks, one of the bankrupts herein.

Schedule B-5 of Leo Curtis Park's petition states:

"Petitioner specifically claims as exempt any and all furniture and household goods not successfully claimed as security by any and all secured creditors."

This court has never before observed an exemption claim asserted in the event of such a contingency, and now that this court has indicated the items in question are free of Beneficial's claimed lien, said claim must be disposed of once and for all as to these items and as to certain other items set forth in the security agreement.

Presumably the use of the term "household goods" in the Ohio filed financing statement had reference to a definition of household goods as defined in California. The bankrupt's rights to an exemption of furniture and household goods, however, must be determined under Ohio laws.

"Furniture" is defined in Webster's New Collegiate

Dictionary as (2) necessary equipment; furnishings; specif; (b) movable articles, as chairs, tables, beds, etc. "Household goods" is not defined in the dictionary, but the term "household furniture" used in a will was defined in *Mc-Micken* v. *McMicken University,* 30 O. Dec. Rep. 429, Am. L. Reg. (N. S.) 489 as "though not susceptible of strict definition, it had acquired a definite meaning by which it is understood to include everything which may contribute to the use or convenience of the householder or the ornamentation of the house, such as plates, linen, china, pictures, etc."

Section 2329.66, Revised Code, grants an exemption to heads of families of the "household furnishings," books, pictures, livestock, and also spells out other exemptions. This section was amended effective December 14, 1967, but only as it related to the garnishment of a debtor's wages, leaving untouched the archaic and unrealistic exemptions of real necessities and the value thereof, as measured by the present economy, but this matter must be decided on the statute as it is presently written. No Ohio case law has been called to this court's attention disposing of the question of the exemptibility of the chattels, the subject of this action. Beneficial's brief says a Colorado Referee in Bankruptcy held a "chord organ" was household furniture, but neither the summarized opinion attached nor the brief advises what the relative Colorado exemption statute was, that case being decided on the question of the adequacy of the description in the financing statement, and not under the Colorado exemption statutes.

The state of Minnesota has an exemption statute (Section 550.37), exempting certain defined articles, "and musical instruments for the use of the family," and all other household furniture not herein enumerated, not exceeding $500 in value. It is noted it exempts "and musical instrument for the use of the family," which exemption is not found in Section 2329.66, Revised Code, but in all other respects it is the same in substance.

In 113 F. 2d 929, one Nichaelson, a bankrupt, excepted to the trustee's report of exempt property wherein the

trustee specifically omitted from the list of exempt property a television set belonging to the bankrupt. The district court affirmed the referee and held that:

"A television set is not 'household furniture' or a 'musical instrument' within state statute providing that musical instruments for use of family and certain enumerated household furniture shall not be liable to attachment and hence not exempt under the Bankruptcy Act provision saving to bankrupt exemptions prescribed by state law."

"Under statute providing that wearing apparel of debtor and his family, beds, bedsteads, stoves, cooking utensils and all other household furniture shall not be liable to attachment, rule of *ejusdem generis* was applicable and meaning of 'household furniture' would be limited by enumerated items which were items such as are required to provide common necessities of life in household."

This case appeared as *Nichaelson* v. *Elliott* in the Eighth Circuit Court of Appeals and was affirmed on February 1, 1954, and the text reported in full in CCH Paragraph 57,993.

The characteristics of the record player are similar to those of a television set (which articles are the subject of this turnover order) and therefore cannot be held exempt to the bankrupt, and bankrupt's contingent demand for the exemption of those articles is therefore denied.

The court further notes that the security agreement under discussion also covers one tape recorder, and one Bell & Howell projector camera, which this court determines are not exempt to the bankrupt and are the property of the trustee herein, and bankrupt's contingent demand for the exemption of those articles is therefore denied.

There being no adverse interests represented herein, it is ordered that the bankrupt forthwith turn over and deliver possession of the Packard Bell Model 63 record player, one G. E. television set, and one Olympic portable television set, now in their possession, to Lorn P. Stevenson, trustee herein, and it is

Further ordered that the alleged security interest of the Beneficial Finance Company on all the property de-

scribed in the security agreement, and in the original financing statement filed in California be, and it is hereby determined invalid as against Lorn P. Stevenson, Trustee in Bankruptcy, for the within bankrupts.

### ORDER ON RE-HEARING

At Canton, in said District, on the 22nd day of August 1968.

EMSLEY, Referee in Bankruptcy. After this court made an order in these causes on July 26, 1968, Beneficial filed an application for a rehearing, claiming there had been filed in Ohio, a financing statement signed by Beneficial, the secured party, as permitted by Section 1309.39(B), Revised Code, and upon consideration thereof a rehearing was granted, and on the rehearing this court found from the evidence that an instrument termed a financing statement, bearing Recorder's Serial No. 18167 was in fact signed by R. E. Gibbons acting as agent for Beneficial, the secured party, and therefore said instrument termed a financing statement was signed by the secured party. Beneficial urges now that this court has found Beneficial did sign the instrument termed a financing statement, that in all respects the filing of said instrument in Wayne County, Ohio, was in accordance with Section 1309.39, Revised Code, and they thereby insured the continuity of the perfection of its lien. With that contention this court cannot agree.

When a creditor seeks to continue the perfection of its lien obtained in another state, it is required to comply with Section 1309.39(A) and (B)(1), Revised Code, by filing a financing statement. Section 1309.39(D), Revised Code, states the term "financing statement" means the "original financing statement and any amendments." Manifestly if the original financing statement was already on file in another state, it would be impossible to file the identical original financing statement in Ohio to continue the perfection of the lien it already had. The provisions of Section 1309.39(A) and Section 1309.39(B)(1), Revised Code, this

court regards as the authority for the filing of a copy of the foreign filed financial statement, and for the authority to make the permissive amendments thereto as contemplated in Section 1309.39, Revised Code, to wit: (1) an amendment showing it was signed only by Beneficial, the secured party; (2) an amendment showing the circumstances under which the collateral was brought into Ohio; and an amendment showing the change in address of either or both the debtor and the secured party, all of which was done herein. There is no statutory authority for any other amendment to, or deviation from the original financing statement filed in the first jurisdiction, except that an amendment may add collateral. Hence the filing in Ohio of an instrument termed a financing statement bearing a different date than the original, and describing the collateral in a different manner by the use of different words and phrases is a falsified financing statement and constitutes a failure to file "the original financing statement and any amendments," as contemplated by Section 1309.39, Revised Code, and therefore is ineffective to continue the perfection of its lien which was valid in the state where originally filed. Beneficial further contends that even though they used different words and phrases in describing their collateral and inserted a date different from the California filed financing statement date, in their Ohio filed instrument, that these are the minor errors contemplated and permitted in Section 1309.39(E), Revised Code, and are not seriously misleading. In effect they claim they can continue the perfection of their lien in Ohio by filing their own version of the original financing statement filed in California. This is an attempt to impeach, desecrate, tamper with and profane a public record, and the errors so made are major errors and as such are neither excused nor forgiven in Section 1309.39 (E), Revised Code. Beneficial showed a lack of good faith in attempting to continue the perfection of its lien.

" 'Good faith' means honesty in fact in the conduct or transaction concerned." Section 1301.01(S), Revised Code.

All courts are interested in preserving the integrity

and reliability of a public record, and to permit a creditor to effect a change in a public record under the circumstances outlined here would be unconscionable. There being no adverse interests represented, it is

ORDERED that the alleged security interest of the Beneficial Finance Company on all of the chattels described in the security agreement, and in the original financing statement filed in California, and in the instrument termed a financing statement, filed in Wayne County, Ohio, be, and they are hereby determined to be invalid as against Lorn P. Stevenson, Trustee In Bankruptcy, for the within named bankrupts.