COPPAGE, RECEIVER OF SECURITY FINANCIAL INSURANCE CORPORATION *v.* COLEMAN, RECEIVER OF FIRST GENERAL SAVINGS AND LOAN COMPANY

[No. 121, September Term, 1971.]

*Decided December 9, 1971.*

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

Submitted by *George D. Hubbard, James P. Garland* and *Albin M. Plant* for appellant.

Submitted by *Joe M. Kyle* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case two receivers are engaged in a dispute as to whether an interest bearing secured claim should accrue interest to the date of payment when the security admittedly is more than the amount of the claim. We conclude that it should and, therefore, we shall reverse the decision of the chancellor who apparently believed that the fact the secured debt was owed to a corpora-

tion also in receivership altered what might otherwise be the law.

Appellant, John H. Coppage, is Receiver of Security Financial Insurance Corporation (Security). Appellee, Tracy C. Coleman (Coleman), is Receiver of First General Savings and Loan Company (First General). The Security receivership proceeding is under the supervision of the Circuit Court of Baltimore City. The First General proceeding is in the Circuit Court for Montgomery County. Security is an insurance company which insured deposits of a number of savings and loan associations such as First General.

On January 17, 1962, Security loaned First General $40,000. The interest bearing note was secured by the pledge of certain first deeds of trust and deed of trust notes. On February 15, 1962, Security advanced $36,500 to First General for which First General executed an interest bearing demand note also secured by the pledge of certain first deeds of trust and deed of trust notes. The chancellor said in relevant part:

> "The Maryland Court of Appeals has never directly considered the question now before the Court and none of the cases cited by the Receiver of Security deal with a factual situation such as here present, i.e. where a secured creditor in receivership makes claim for interest against another receivership. Also, we have no surplus which would, of course, make this decision much simpler. This member of the Court, however, has supervised the instant receivership and several others in this jurisdiction from the outset in 1962 [listing in a footnote three others supervised by him and four supervised by other judges of his court]. Familiarity with this unfortunate 'Savings and Loan Scandal' and supervision of the receiverships since 1962 clearly indicates a plan and scheme between these savings and loan associations, as lenders,

and Security, as insurers, which plan has created substantial shortages to shareholders in both First General and Security. This close relationship between the two companies, therefore, cannot be ignored in balancing equities. Security elected to look to collateral and the sales thereof brought the sum of $84,952.86, a sum substantially in excess of the principal amount of the two loans. Having elected to look to collateral for payment and the collateral having more than satisfied the principal indebtedness, the equities now dictate that interest to April 23, 1965 (date of ratification of the four sales made by the Receiver for First General) should be the day of finality for payment of interest. After April 23, 1965, much of the rationale for allowance of interest in equity receivership cases is gone, as this collateral could no longer produce interest. Additionally, Security has had the use of $14,425.19 since February 2, 1968. The Court is mindful of the fact that the respective Receivers have not made distribution by agreement between them. However, this should not work to the total detriment of the general creditors of First General."

The duties of Coppage as the receiver of Security are as prescribed by Code (1968 Repl. Vol.) Art. 48A, § 145. In *Gaither v. Stockbridge,* 67 Md. 222, 9 A. 632, 10 A. 309 (1887), Chief Judge Alvey observed of a chancery receiver:

"His appointment does not change the title to the property, or create any lien upon the same, in favor of any of the parties interested; his holding being for the benefit of the party who may be ultimately determined to be entitled." (Citing authorities.) *Id.* at 225.

In *Hannah K. Chase's Case,* 1 Bland 206 (1826), in-

volving the real estate of Samuel Chase,[1] Chancellor Bland put the proposition slightly differently when he said:

"The appointment of a receiver does not involve the determination of any right; or affect the title of either party in any manner whatever * * *." *Id.* at 213.

This statement was cited with approval by Chief Judge Dorsey for our predecessors in *Ellicott v. U.S. Ins. Co.,* 7 Gill. 307, 320 (1848). Since the receiver for Security stands in the position of Security, it follows that this case must be decided on the same basis as it would have been decided if Security were not in receivership.

Coleman relies upon *Beilman v. Poe,* 138 Md. 482, 114 A. 568 (1921), stating that our predecessors there held that a "judgment creditor was not to be preferred over the other *general* creditors with reference to interest." (Emphasis supplied.) He cites that portion of the opinion in which it was said:

"That the courts of this State are authorized to disregard interest in distributing the assets of insolvents, is settled by the *American Casualty Insurance Company's Case,* 82 Md. 535 [, 34 A. 778 (1896)]." *Id.* at 487.

However, the claim in *Beilman* was not a secured claim nor was the claim in *American Casualty Insurance Company's Case* a secured one. In *Beilman* Judge Adkins went on to say for the Court:

"What difference can it possibly make to appellant whether interest be computed on all unsecured claims or none, it being admitted that the assets are insufficient to pay in full, even

---

1. Member of Council of Safety, 1775; signer of the Declaration of Independence; member of the Constitutional Convention of 1776; member of the Maryland Convention which ratified the Constitution of the United States; and Associate Justice of the Supreme Court of the United States, 1796-1811.

without interest? But what he is asking is that interest be computed on his claim alone simply because he happens to own a New York judgment. He could with as much reason complain that his judgment is not paid in full while all other creditors receive only a dividend." *Id.* at 487.

The issue in the case at bar is not to be confused with the issue which existed in *Family Savings v. Stewart,* 241 Md. 89, 215 A. 2d 726 (1966), cited by Coleman, where one class of creditors was seeking interest before another class was paid anything.

The rule in chancery receiverships is as stated in 3 *Clark on Receivers* § 660 (a) (1959) :

"*Interest on secured claims.* * * * If interest is secured to the claimant by his contract of pledge, mortgage or other lien, then the creditor cannot be compelled to relinquish his right to hold or appropriate the security which he holds until he has been paid both principal and all interest due up to the time he relinquishes the security. Out of the security or securities, if when disposed of there is realized enough or more than enough to pay the secured creditor, he must be paid his full claim with interest to date of payment, before balance can properly be turned over to the receiver for distribution to other creditors." *Id.* at 454-55.

See also *Tardy's Smith on Receivers* § 598 (2d ed. 1920) ; the article by the author of *Clark on Receivers,* entitled *Interest on Claims in Receivership Proceedings* in 19 *Mich. L. Rev.* 35, 39-40 (1921) ; *Walter v. Peninsula Cut Stone Co.,* 82 A. 961 (Del. Ch. 1912) ; *Wilson v. Dewey,* 133 F. 2d 962 (8th Cir. 1943) ; and *Eddy v. Prudence Bonds Corporation,* 165 F. 2d 157 (2nd Cir. 1947), the latter two being bankruptcy cases. In *Spring Coal Co. v. Keech,* 239 F. 48, L.R.A. 1917D, 1152 (4th Cir. 1916), the court said :

"We think a careful reading of all the authorities will show that where estates are insolvent and all the claims are of like dignity, the court declares the dividend upon the basis of the amount of principal due at the time the property passed into the hands of the court, because it is immaterial whether the dividend is calculated upon the interest and principal combined, or the principal alone; but where there are claims of different classes, and one is secured by a mortgage of real estate, the holder of such mortgage is entitled not only to the principal, but to the interest that accrues up to the time of satisfaction, even though non lien creditors may not receive any dividend at all. This must be so if the court enforces contracts as parties made them." *Id.* at 53-54.

It is true, as the chancellor said, that courts in dealing with insolvency claims have spoken of balancing the equities. In *Republic v. Phoenix S. & L. Ass'n,* 254 Md. 532, 535, 255 A. 2d 39 (1968), we referred indirectly to a quotation from *In re Inland Gas Corporation,* 241 F. 2d 374, 379-80 (6th Cir. 1957) to that effect. In *Vanston v. Green,* 329 U. S. 156, 67 S. Ct. 237, 91 L. Ed. 162 (1946), cited in *Inland* the Court, as quoted by Coleman, said:

"It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." *Id.* at 165.

The entire theory of interest in receivership proceedings and balancing of equities is set in better perspective when one reads that portion of *Vanston* immediately prior to the above quotation. The Court there explained the theory upon which interest was allowed in some claims and disallowed in others. It said:

"Simple interest on secured claims accruing after the petition was filed was denied unless the security was worth more than the sum of principal and interest due. *Sexton v. Dreyfus,* [219 U. S. 339]. To allow a secured creditor interest where his security was worth less than the value of his debt was thought to be inequitable to unsecured creditors. * * * But where an estate was ample to pay all creditors and to pay interest even after the petition was filed, equitable considerations were invoked to permit payment of this additional interest to the secured creditor rather than to the debtor. *Coder v. Arts,* 213 U. S. 223, 245; *Sexton v. Dreyfus, supra.* See also *Johnson v. Norris,* 190 F. 459." *Id.* at 164-65.

In *Republic* we said:

"It will thus be seen that the idea which has prevailed in proceedings of this sort, however inconsistent the decisions may appear at times to be, is that, to the extent possible, all creditors of a given class should be on the same basis and on the same footing. Republic is the same class of creditor as those free shareholders who were permitted to withdraw specified sums each year beginning in 1962 and continuing through 1967. They have had the benefit of the use of their money while Republic has been denied the use of its money pending litigation. We believe it fair and equitable for Republic to be allowed interest on the dividends to which it is entitled from the date those corresponding dividends became payable to other free shareholders." *Id.* at 540-41.

The terms "balancing the equities" and "equitable principles" have been used in speaking of the relationship of claims within a class or where an estate was ample to pay all creditors. We have found no case nor has

our attention been called to a case in which a contract has been impaired by denying a secured creditor interest when the security was more than ample to pay interest and principal. We do not see the fact that there will be an ultimate claim against Security on behalf of First General because of its insurance policy under which it is bound to protect the deposits of First General nor the fact that Security and First General are both in receivership as altering the otherwise applicable law.

First General obligated itself to pay interest on the principal. The pledged collateral is more than sufficient to pay the principal and the interest. Therefore, in accordance with the contract of the parties, interest should be allowed to the date of payment in each instance, unless such allowance exhausts the collateral pledged in which case after payment of principal in full interest will be allowed to the extent of the collateral pledged.

> *Order reversed and case remanded for passage of order in accordance with this opinion; costs to be paid one-half by appellant and one-half by appellee.*