EDWARD L. GENN, ASSIGNEE *v.*
CIT CORPORATION

[No. 1297, September Term, 1977.]

*Decided November 2, 1978.*

The cause was argued before MOYLAN, MELVIN and COUCH, JJ.

*Edward L. Genn* for appellant.

*Charles M. Tatelbaum,* with whom were *Schimmel & Tatelbaum, P.A.* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

The appeal in this case is from an order in an insolvency proceeding in the Circuit Court for Prince George's County (Loveless, J.) filed October 31, 1977, in which the appellant Edward L. Genn, assignee for the benefit of creditors of

Metropolitan Lithograph, Inc. (hereinafter referred to as Metropolitan) was directed to pay $434,977.21 to the appellee CIT Corporation to discharge debts incurred in the previous year when Metropolitan made two promissory notes payable to the appellee.[1] The appellant's primary, but not sole, contention on appeal is that the trial judge erred in determining the amount properly due the appellee.

On February 19, 1976, the appellee, through a loan of $39,614.40, enabled Metropolitan to obtain a camera for use in its printing business. In consideration thereof Metropolitan promised in writing to pay the appellee $54,489.05, payable in sixty (60) monthly installments of $908.15 and granted the appellee a security interest in the camera. Later in the same year, on August 4, 1976, Metropolitan made another note payable to the appellee in return for $200,000.00 cash and consolidation of prior loans and interest in the amount of $176,392.78. The August note obligated Metropolitan to pay $519,610.23 in sixty (60) monthly installments of $8,660.17, and was secured by an agreement granting the appellee a security interest in Metropolitan's machinery, fixtures and equipment. Both notes provided that monthly payments be made

> "together with interest before maturity payable monthly on unpaid balances at the rate of 0% per annum and after maturity of any and all instalments at 1 1/2% per month if not prohibited by law, otherwise at the highest lawful contract rate . . . . Upon non-payment of any installment at its maturity, all remaining installments shall, at the option of the holder hereof, become due and payable forthwith."

The difference between the amount actually loaned by the appellee to Metropolitan in February and August and the amount Metropolitan promised to repay was, according to the

---

1. While this order is not a final judgment within the meaning of Md. Ann. Code, Cts. & J. Proc. Art., § 12-301 (1974) it is immediately appealable by virtue of Md. Ann. Code, Cts. & J. Proc. Art., § 12-303 (c) (5) (1977 Cum. Supp.).

testimony of both parties at the hearing below, add-on interest, and was calculated to reap a return of 13 or 14 percent per annum on the amount loaned. The add-on interest on the February and August notes was $14,860.65 and $143,217.45, respectively. Metropolitan made fifteen (15) payments on the February note and nine (9) payments on the August note, the last payment on both notes being made on May 31, 1977.

Shortly thereafter, on June 13, 1977, Metropolitan effected an Assignment for the Benefit of Creditors designating the appellant as assignee. The following day the Circuit Court for Prince George's County (Bowen, J.) declared Metropolitan insolvent and authorized the appellant to sell the insolvent's assets. On August 5, 1977, appellant filed a petition to sell Metropolitan's machinery, fixtures and equipment on August 31, 1977, free and clear of all claims of creditors, including the liens of the appellee. The appellant proposed to transfer the liens of the appellee to the proceeds of the sale, and to distribute the proceeds upon determination of the validity and amount of the appellee's claim. In response to a Show Cause Order issued by the court at the request of the appellant, the appellee, at a hearing held on August 25, 1977, asserted that it was entitled to receive payment, immediately upon sale of the collateral, of the face value of the notes minus payments previously made. Because the face value of the notes included interest to be paid over a five year period, payment of the outstanding balance after only one year would include payment of interest that had never actually been earned. In recognition of this inequity, the appellee, rather than state a claim for the $441,668.70 outstanding on the face value of the August note and $40,866.80 outstanding on the face value of the February note, offered to deduct from the outstanding balance of both notes an amount representing some of the unearned interest, even though, in the appellee's view, it was not legally obligated to do so. By applying one-half the Rule of 78[2] the appellee calculated the amount of unearned

2. The Rule of 78 is an arithmetic formula widely used by banks and financing institutions to determine the amount of interest unearned at the time of prepayment of an indebtedness. For an explanation of the Rule see Bone v. Hibernia Bank, 493 F. 2d 135, 137 (9th Cir. 1974).

interest as of September 1, 1977, the day after the sale of the collateral, to be $3,654.98 on the February loan and $43,903.31 on the August loan. The total outstanding balance on the two notes, then, claimed to be due by the appellee on September 1, 1977, after the gratuitous deduction of unearned interest, was $434,977.21, representing a balance due of $37,211.82 on the February note and a balance due of $397,765.39 on the August note. The trial court agreed with the appellee and on August 26, 1977, ordered the appellant to pay the amount claimed by the appellee by September 12, 1977, unless the appellant in the meantime found a basis for retaining any of the amount claimed. The appellant failed to pay as ordered and a second hearing was held on October 19, 1977. The trial court rejected the additional arguments put forth by the appellant at that time, and on October 31, 1977, again ordered that $434,977.21 be paid to the appellee.

The appellant contends that payment to the appellee of $397,765.39 for the August loan and $37,211.82 for the February loan would be, in part, a penalty or forfeiture, and, as such, cannot be ordered by a court of equity. We agree with the appellant and hold that the award of the aforementioned amounts in these circumstances is a forfeiture or penalty to the extent the holder of the notes retains or recovers interest that had not been earned as of the accelerated maturity date.

A forfeiture is the loss or deprivation of property in consequence of some offense or breach of duty, *Kahn v. Janowski*, 191 Md. 279, 287, 60 A. 2d 519 (1948) and neither a penalty nor a forfeiture will be enforced by a court of equity. *Id.* at 286; *Litteral v. Houser*, 221 Md. 403, 412, 158 A. 2d 75 (1960). Acceleration of the maturity date of a promissory note, though, in accordance with a provision in the agreement of the parties is not a penalty or forfeiture, but, rather, is an agreed upon means of determining when the debt shall become due, and will be enforced at law and equity. *B-M-G Investment Co. v. Continental/Moss-Gordin, Inc.*, 320 F. Supp. 968, 973 (N.D. Texas, 1969); *Foreman v. Myers*, 79 N. M. 404, 407, 444 P. 2d 589 (1968); *Messner v. Mallory*, 107 Cal. App. 2d 377, 380, 236 P. 2d 898 (1951). However, even though an acceleration clause itself is not a penalty or

forfeiture, there remains the possibility, especially when the face value of the note includes add-on interest, that the effect of the operation of the acceleration clause will result in a penalty or forfeiture. As the total add-on interest included in the face value of the August note was $143,217.45, the lower court's award of the face value of the note reduced only by the gratuitous rebate of $43,903.31 of unearned interest results in a recovery by the appellee of $99,314.14 interest for the first twelve months of the repayment period. Likewise, the award of the face value of the February note reduced only by $3,654.58 of unearned interest results in a recovery by the appellee of $11,205.67 interest for the first eighteen months of the repayment period. Obviously, if allowed to recover the amount claimed, the appellee would have earned interest on both notes at a substantially higher rate than intended by the parties in their agreements. In view of the fact that the intended rate of return on both notes was 13 or 14 per cent per annum, that portion of the interest claimed by the appellee to be due as of September 1, 1977, which, if awarded, would result in the imposition of a rate of interest greater than the intended rate should be considered interest that had not yet been earned, but that, instead, was prepaid for the use of money in the future. Interest is a means of compensation for the use, forbearance or detention of money, and prepaid interest is consideration for the use, forbearance or detention of money, which consideration is due before it actually accrues. *Goldman v. First Federal Savings & Loan Association of Wilmette,* 377 F. Supp. 883, 886 (N.D. Ill., E. D. 1974). When, as in the present case, interest has been prepaid and the lender exercises his option to accelerate payment of the debt, the borrower is not only denied the use of the money in the future, but, in addition, is deprived of the interest already paid for the use of that money, unless he is afforded a rebate of the prepaid but unearned interest. The order by the trial court, then, directing the appellant to pay $434,977.21 to the appellee causes the appellant to forfeit that portion of the interest claimed by the appellee to be due but which had not been earned as of September 1, 1977.

There is no case law in Maryland, to our knowledge, which directly addresses the issue of whether, in a situation where

the maturity date of a promissory note is accelerated by the holder of the note, the recovery of unearned interest by the holder is a penalty. However, the Maryland Court of Appeals, in *Santini v. Fritkin,* 240 Md. 542, 544-45, 214 A. 2d 578 (1965), a case in which the main issue involved a determination of when the statute of limitations begins to run if a holder accelerates payment of a note, has stated "(W)hen ... the holder takes positive action indicating that he has elected to exercise the option, then the full amount of the unpaid balance of principal and *accrued* interest becomes immediately due and payable and the statute of limitations begins to run from that time." (Emphasis added) Based on the Maryland court's use of the word "accrued" the District of Columbia Court of Appeals, in *Block v. Ford Motor Credit Co.,* 286 A. 2d 228 (D.C. App. 1972), a case to which Maryland law applied, held that Maryland law would not allow recovery of interest not yet accrued in a case where the maturity date of a promissory note is accelerated by the holder of the note because such recovery would be an award of "disproportionate damages, *i.e.,* a penalty, and would therefore be unconscionable" 286 A. 2d at 234. The rule that the holder of a note cannot recover unearned interest upon acceleration of the note's maturity date has been adopted by the courts of the various jurisdictions which have considered the matter. *See Chavez v. Aetna Finance Co.,* 553 S.W.2d 174 (1977); *New Jersey Mortgage and Investment Company v. Young,* 134 N. J. Super. 392, 341 A. 2d 360 (1975); *Dartmouth Plan, Inc. v. Landkammer,* 370 N.Y.S.2d 318, 82 Misc. 71 (1975); *Chapman v. Capri Construction Company,* 248 So. 2d 101 (La. App. 1971); *Mann v. Earls,* 37 Cal. Rptr. 877 (1964); *A-Z Servicenter, Inc. v. Segall,* 334 Mass. 672, 138 N.E.2d 266 (1956); *Tobin v. Holmboe,* 172 Okl. 546, 45 P. 2d 716 (1935). *See also* 10 C.J.S. *Bills and Notes,* S.251(a) at 748, which states:

> "A note providing for the payment of the principal in installments at specified times, and requiring the payment of interest on each installment until maturity, does not require the payment of future unearned interest in the event the maturity date is

hastened by virtue of an acceleration clause contained in the note."

The penal nature of awarding recovery of the face value of a note upon acceleration of the maturity date without a rebate of unearned interest is pointed up by the appellee's assertion that the full face value of the note would be due, at the holder's option, if the maker is delinquent in the payment of the first of sixty installments. Such recovery in the case presently before the court would, in effect, be an award of more than $140,000 in damages for the late payment of $8,660.17. Hence, we hold that when the holder of a promissory note exercises his option to accelerate the maturity date of the note, he may neither recover nor retain any amount representing interest unearned as of the accelerated maturity date.[3]

Additionally, the appellant asserts that interest on the promissory notes accrued only until the Assignment for the Benefit of Creditors on June 13, 1977. The rule on which the appellant relies in support of his assertion is that in equity receiverships interest on the debtor's obligations ceases to accrue upon the initiation of insolvency proceedings. *In re Inland Gas Corp.,* 241 F. 2d 374, 379 (6th Cir. 1957). If, however, a creditor has a security interest in collateral the value of which is sufficient to cover not only the principal amount of the debt but also the interest accrued after initiation of the proceedings, the interest accruing pursuant to the parties agreement may be recovered regardless of when the insolvency proceedings were initiated. *Id.* at 379; *Coppage v. Coleman,* 263 Md. 639, 644, 284 A. 2d 211 (1971). *See also* 3 Clark, *Receivers* § 660(a) at 1154 (1959). As the sale

---

3. Our holding that the application of one-half the Rule of 78 in this case does not sufficiently reflect the amount of interest unearned at the accelerated maturity date is not to be construed as either our approval or disapproval of the Rule itself as an appropriate method of determining the rebate required. The primary issue litigated in the lower court was whether there should be any rebate of unearned interest; the question of how such rebate should be calculated was not raised and decided below, nor was it presented on appeal. Therefore, as this Court ordinarily does not decide any point or question not raised and decided below, see Md. Rule 1085, the amount of interest unearned as of the accelerated maturity date should be determined by the trial court.

of the collateral in the present case produced sufficient proceeds to cover both the principal and accrued interest on the two notes, the interest continued to accrue after the date of the Assignment.

Finally, on the financing statement filed to perfect the interest granted by Metropolitan to the appellee to secure the August note, the principal amount of the underlying transaction was stated to be $267,100.20, and, according to testimony offered below, a recordation tax was paid on this amount rather than the amount recited in the security agreement. The appellant claims that the inaccurate statement of the principal amount secured and the failure to pay the appropriate recordation tax should render the appellee's security interest unperfected as to any amount greater than the amount stated on the face of the financing statement. We disagree. Even though the failure to pay the appropriate recordation tax may constitute a violation of Md. Ann. Code, Art. 81, Section 278 (1975 Repl. Vol.) and subject the recording party to a penalty, it does not necessarily follow that the amount of the secured debt is limited to that amount stated on the financing statement or on which the recordation tax was paid. The purpose of recording a financing statement is to provide any interested person, not with all the information he needs to understand the underlying transaction, but only with the information that such transaction has taken place and that the particulars may be obtained from the named secured party at the address shown. *Plemens v. Didde-Glaser, Inc.*, 244 Md. 556, 563, 224 A. 2d 464 (1966). A financing statement does not purport to be anything more than a method of giving notice of the probability that the secured party has a security interest in the stated collateral. *Household Finance Corporation v. Bank Commissioner of Maryland,* 248 Md. 233, 239, 235 A. 2d 732 (1967). To allow the inclusion of statements of the amount of the debt on the face of financing statements to be a basis for estopping the secured party from claiming a security interest to the extent provided in the security agreement would promote the financing statement from an instrument of notice to an instrument of legal effect equivalent to a security

524

agreement. It is a well-established rule that, even though a security agreement can serve as a financing statement, a financing statement cannot serve as a security agreement. *L & V Company v. Asch,* 267 Md. 251, 254, 297 A. 2d 285 (1972). The appellee's security interest, then, in the equipment, machinery and fixtures of the insolvent should not be limited to the amount disclosed on the financing statement.

> *Order reversed.*
> *Case remanded for further proceedings not inconsistent with this opinion.*
> *Costs to be paid by appellee.*