**In re Jimmy E. DAVIS, Debtor.**

**John C. McLEMORE, Trustee, Plaintiff,**

v.

**FARMERS HOME ADMINISTRATION, Defendant.**

**Bankruptcy No. 283-02833.**
**Adv. No. 284-0116.**

United States Bankruptcy Court, M.D. Tennessee.

Oct. 24, 1984.

Edwin M. Walker, III, Nashville, Tenn., for trustee.

Sylvia Ford Brown, Asst. U.S. Atty., Nashville, Tenn., for Farmers Home Administration.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether the secured claim of Farmers Home Administration ("FmHA")

---

is limited to the amount stated on the face of its U.C.C.–1 financing statement. Because the reference to the original loan amount on the financing statement in this case is not a misleading surplusage, the FmHA is fully secured for subsequent advances to the debtor.

The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The facts have been stipulated and the proceeding submitted on cross-motions for summary judgment. On or about November 21, 1978, Jimmy E. Davis ("debtor") borrowed $30,600 from the FmHA. A promissory note and a security agreement were executed and a financing statement was filed with the appropriate Register of Deeds for Macon County, Tennessee. The financing statement adequately described the collateral and also contained the addresses and signatures of both parties. There is no claim that the security agreement or financing statement does not meet the minimum requirements of Tennessee law. However, the financing statement contained the additional words "Loan amt. $30,600.00" which represented the amount of the original promissory note.[1] These added words are the source of the present controversy.

In June 1979, June 1980, June 1981, June 1982 and May 1983, the parties executed new notes and security agreements covering the same collateral as the original security agreement. New funds were advanced at these times, but no new financ-

ing statement was executed. A "continuation" of the original financing statement was filed on May 9, 1983.

On September 24, 1983, the debtor's property was sold at auction, including the collateral covered by the FmHA financing statement and security agreements. On October 5, 1983, proceeds from the auction in the amount of $57,698.88 were applied by FmHA to three of its notes with the debtor. On October 20, 1983 the debtor filed bankruptcy. The Chapter 7 trustee brought this adversary proceeding claiming that FmHA's security interest should be limited to $30,600. FmHA concedes that if its security interest is limited to $30,600 then the excess application of funds ($27,098.88) constituted an avoidable preference under 11 U.S.C. § 547.

This court must look to the state law of Tennessee to determine the sufficiency of the FmHA financing statement. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 740, 99 S.Ct. 1448, 1464, 59 L.Ed.2d 711 (1979). In Tennessee the formal requirements for a financing statement are found at TENN. CODE ANN. § 47–9–402.[2] Reference to the amount of debt is not required.[3] As stated in the "comments to official text" the only content requirements are (1) signatures and addresses of both parties and (2) a description of the collateral by type or item.

■ In the parlance of U.C.C. cases, the inclusion of information on a financing statement which is not formally required by state law is "surplusage." Such sur-

---

**1.** It is not uncommon in Tennessee for creditors to note the amount of current indebtedness on the face of the financing statement to signal the taxing authorities of the basis for calculating the Tennessee recording tax. *See* TENN. CODE ANN. § 67–4–409(b).

**2.** TENN. CODE ANN. § 47–9–402 reads in pertinent part as follows:

(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be

filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned and the name of the record owner thereof. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.

**3.** Professor Gilmore has noted that "statements of the original amount of indebtedness secured are relatively unhelpful, since there is no way of knowing how much may have been paid down." G. Gilmore, *Security Interests in Personal Property*, Vol. 1 p. 469–470 (1965).

plusage may be so misleading as to make the financing statement defective or it may be considered a minor error which does not negate the effectiveness of the filing. The distinction is dependent upon the particular facts of each case.

The Uniform Commercial Code as adopted in Tennessee states that "a financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." TENN. CODE ANN. § 47–9–402(5). Most of the case law interpreting this provision has concerned errors involving the required elements of the financing statement—incorrect spelling of names, wrong or omitted addresses, alleged inadequate description of collateral, and problems in filing for individuals doing business under assumed names. In these situations the courts have "utilized a flexible, ad hoc approach to determine by an essentially factual inquiry, the extent to which an error would be misleading to one undertaking a reasonable search." *In re McCauley's Reprographics, Inc.*, 638 F.2d 117, 119 (9th Cir.1981).

Cases in this area are usually concerned with the effect the error will have on notice to subsequent parties examining the filing records. For example, filing under a trade name may be insufficient to perfect a security interest against an individual debtor. In a leading Second Circuit case, the court asked "would a subsequent creditor looking under 'Leichter' [individual name] be led to find the security interest filed and indexed under 'Landman' [trade name]?" *In re Leichter*, 471 F.2d 785 (2d Cir.1972). Even where required information may be completely missing, the effect on notice is still analyzed. *See, e.g., Rooney v. Mason*, 394 F.2d 250 (10th Cir.1968) (omission of the debtor's address was not fatal).

■ Where extra, unnecessary words are added, the effect of the surplusage should be analyzed much the same as errors involving the required details. If anything, a less strict scrutiny should be used where the financing statement accurately provides the required information since there is then less likelihood that the surplusage affects notice. If the extra words are false or purposefully misleading, there may be good reason to hold the financing statement defective. *See In re Parks*, 16 Ohio Misc. 135, 5 U.C.C.REP. 1107 (Bankr. N.D. Ohio 1968) (the filing in Ohio of an instrument bearing a different date then original California financing statement was a "falsified" financing statement which failed to continue the perfection of the original California lien in Ohio). However, where the surplusage merely gives additional, albeit unnecessary, information which does not hinder the notice effect of the financing statement, the surplusage should not affect the validity of the filing. *See Barton v. ITT Diversified Credit Corp. (In re Skinner)*, 22 U.C.C.REP. 1286 (Bankr.W.D.Mich.1977) (addition of trade name and spouse's name in financing statement is not seriously misleading).

■ On the facts of this proceeding, the language "Loan amt. $30,600.00" does not nullify or alter the notice effect of the financing statement. A financing statement is designed to give notice that the secured party identified in the statement may have a security interest in the collateral described. Any third party who wants to know further details is given names and addresses of the parties to contact. *See* TENN. CODE ANN. § 47–9–402 "Comments" ¶ 2. The phrase "Loan amt. $30,-600.00" used in the present financing statement was true at the time of filing and certainly does not by its terms preclude further indebtedness between the parties. It would be just as reasonable to interpret the words "Loan amt. $30,600.00" as indicating the amount of the first of several advances as to believe that the words were intended to limit the total debt to be incurred. On similar facts in a case where the secured party added to a financing statement the words "the present amount of indebtedness is $100,000," Chief District Judge Morton held that the phrase implied the possibility of additional indebtedness in the future and, therefore, did not limit the secured claim. *Jackson County Bank v.*

*Ford Motor Credit Co.,* 488 F.Supp. 1001, 1007 (M.D.Tenn.1980).[4] *See Genn v. CIT Corp.,* 40 Md.App. 516, 392 A.2d 1135, 25 U.C.C.REP.SERV. 1176 (1978).

 In the present case, all the security agreements contained future advances clauses and there is no contention that all the subsequent advances and notes were not binding as between the parties. A single financing statement can cover security agreements which include future advances. The financing statement itself need not contain reference to future advances. *See In re Bates,* 35 B.R. 475, 480 (Bankr.M.D.Tenn.1983); *In re Rivet,* 299 F.Supp. 374 (E.D.Mich.1969). Anyone put on inquiry by the filed financing statement could easily discover that the parties had entered into new loans secured by the same collateral as the original agreement.[5]

A different conclusion was reached in *In re HGS Technical Associates, Inc.,* 14 U.C. C.REP.SERV. 237 (Bankr.E.D.Tenn.) *aff'd.,* 14 U.C.C.REP.SERV. 247 (E.D.Tenn.1972). Therein, the bankruptcy court held that although the words "Amount of indebtedness $30,000.00" were not required on a financing statement "if an amount is placed thereon, it is a representation of fact and if that representation is incorrect, the creditor should not be heard to complain." 14 U.C.C.REP.SERV. at 245. In affirming, the district court observed that "anyone relying upon the stated representation that $30,000 was the extent of the indebtedness would obviously be seriously misled if such indebtedness was considerably more than that amount." 14 U.C.C.REP.SERV. at 248.

We do not say that extra words in a financing statement concerning the amount of debt could never be so misleading as to bind the secured party. However, as indicated above, this court does not believe that the words "Loan amt. $30,600.00" should be considered as either a binding representation of future fact or a seriously misleading surplusage.

Other federal and state decisions addressing Tennessee law on this issue have mainly focused on the effect of a failure to pay the proper state recording tax upon filing of the financing statement.[6] *See American City Bank v. Western Auto Supply,* 631 S.W.2d 410, 423 (Tenn.App. 1981) ("the effectiveness of any financing statement as an instrument of priority is limited in that respect to the amount upon which a privilege tax is paid"). *See also Jackson County Bank v. Ford Motor Credit Co.,* 488 F.Supp. 1001 (M.D.Tenn. 1980);[7] *Commerce Union Bank v. Possum Holler, Inc.,* 620 S.W.2d 487 (Tenn.1981). It is not necessary for us to re-examine the status of Tennessee law with regard to this taxing issue. *See In re Bates,* 35 B.R. 475, 480 (Bankr.M.D.Tenn.1983). We are only here concerned with the effect of surplus words on the financing statement and it is our view that these particular words are not misleading to third parties.

An appropriate order will be entered.

---

**4.** *See* fn. 7 *infra.*

**5.** *See* TENN. CODE ANN. § 47–9–208 which provides a method by which the debtor may request information, including the amount of indebtedness, from the secured party. The comments state this section is designed to help subsequent creditors and purchasers who need more detailed information.

**6.** The FmHA is not subject to the state recording tax. 7 U.S.C. § 1984.

**7.** This case was vacated and remanded on the tax issue by the Sixth Circuit. 698 F.2d 1220 (6th Cir.1982). The unpublished circuit court order directed the district court to consider the *Possum Holler* and *Western Auto* state court decisions which were handed down after the original district court decision. On remand the case was settled and dismissed.